GLENN, *Adm'r. C. T. A. of* CLERY *vs.* BELT, *Adm'r. C. T. A. of* VOLUNBRUN.—*December*, 1835.

By the act of 1810, ch. 34, sec. 4, it was enacted "that no devise, legacy or bequest shall lapse or fail of taking effect, by reason of the death of any devisee or legatee named in any last will or testament, or any codicil thereto, in the life time of the testator; but every such devise, &c. shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest, as if such devisee or legatee had survived the testator."

Held upon the construction of this act.

1. That the *power* of devising was not enlarged nor affected by this act.

2. The object was to remedy inconveniences growing out of the death of legatees before the will could operate.

3. That the latter clause of the act was to designate in what manner the legacy falling in by the death of the legatee should pass.

4. That the time of the transfer is the death of the testator.

5. That the transfer is to persons *in esse,* entitled to the distribution of the legatee's estate.

6. That the property does not pass as assets to the executor or administrator of the deceased legatee.

V made C her universal legatee, and gave him all she might possess on the day of her death, and died before C. C made a similar will in favour of V. Both died leaving their wills unrevoked. *Held,* that the property devised by C to V, under the act of 1810, ch. 34, vested in her personal representatives, among whom, the administrator of C must distribute it in due course of law; but that V's testamentary disposition of her whole estate in favour of C, did not include the estate devised to her by C. It was the mere expectancy of a benefit to be derived from the will of C, not the subject of a testament.

APPEAL from the *Orphans'* court of Baltimore county.

On the 16th of December, 1830, the appellant's testator made and published his last will and testament, by which he constituted the testatrix of the appellee his universal legatee, and gave her all that he might possess on the day of his decease, and died in the year 1832 without revoking his said will.

On the 22d of April, 1828, the testatrix of the appellee also made and published her last will and testament, by which she made the testator of the appellant, her universal legatee, and gave him all that she might possess on the day of her death, and died without revoking the same, *previously* to the death of *Clery.*

Under these circumstances the *Orphans'* court of *Baltimore* county, upon the petition of the appellee, ordered the appellant as the administrator with the will annexed of *Clery,* to pay to the appellee as the administrator with the will annexed of *Volunbrun,* the residuum of the personal estate of *Clery* after the payment of his debts.

From this order the appellant appealed to the court of Appeals.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, Judges.

R. JOHNSON, for the appellant, contended,

That if the legacy to *Madam Volunbrun* did not lapse by her death, before the death of *Clery*, still, by her will, the estate which passed to her under *Clery's* will, went back to the representatives of the latter. *Clery* survived *Madam Volunbrun*, and consequently upon her death, he became entitled to the whole residuum of her estate; and the question is, whether upon his subsequent death, his property *including* what he had derived from *M. Volunbrun* shall go back to her representatives in defiance of her will to the contrary.

The act of 1810, ch. 34, intended to put the representatives of the legatee who died before the death of a testator giving the legacy, in the same situation as such deceased legatee would have been, if he had survived the testator, and consequently *M. Volunbrun* is to be considered as having survived *Clery.* Had this been the case, her will, would have given the whole estate to the representatives of *Clery.* But the act of 1810, does not apply to this case at all. In case of the death of a legatee before the testator, the representatives of the former do not take as purchasers, but as distributees of the deceased legatee. In legal effect therefore, the property which was willed to *Volunbrun* by *Clery*, was her's, at her death, and being so was subject to her will, which gave it to *Clery.* She cannot be said to have died intestate with reference to this property. Her will in favor of a third person would certainly have passed it. The interest of *Volunbrun* in *Clery's* estate, was an interest devisable under the act of 1810, though not at common law. There can be no doubt, that a devise of real estate to a stranger, would enable him to hold against the heir at law.

McMAHON for the appellee.

If *M. Volunbrun* had died intestate, this property would have unquestionably gone to her representatives, as the legacy under the act of 1810, did not lapse by the circumstance of her death before the testator.

The question then is, whether her will in favor of *Clery,*

gives it a different destination; and that depends upon the nature of her interest in it, at the time of her death. That interest he insisted was nothing more than a mere hope or expectancy. It could be nothing more, during the life of *Clery,* who might at any time have revoked, or changed his will. It could be nothing more than a hope at the period of her own death, and so continued down to the death of *Clery.* Such an interest is not devisable at common law, or transferable in any other way. *Bac. Abr. (Grant D 3.) Fitch vs. Fitch et al.* 8 *Pick. Rep.* 482. *Jones et al. vs. Roe,* 3 *Durn. and East,* 88. *Carleton vs. Leighton,* 3 *Merrivale,* 670. *Comegys et al. vs. Vasse,* 1 *Peters,* 220.

2. There is nothing in the act of 1810, which can be construed to make such an interest devisable. The mischief which the act was designed to prevent, was the lapsing of legacies in the life time of the legatee. That was the object pointed at, and the construction should be made to answer that purpose and no other. *Craycroft vs. Craycroft,* 6 *H. and J.* 54.

The effect of the statute is to vest the legacy in the deceased legatee, as the *stirpes* from whom others are to claim, and it passes from such legatee, as in case of intestacy.

3. But at all events the property should in the first place go into the hands of the administrator of *Volunbrun,* who may have debts to pay, for which it is certainly liable in the first instance, whoever may be entitled to the residuum.

ARCHER, Judge, delivered the opinion of the court.

*Madam Volunbrun's* will, could only operate to pass that, which by law was the subject of a devise or bequest. The expectancy of a benefit to be derived from the will of *Clery,* was but a naked possibility, and could not, under any authority cited, be the subject of a testament. Indeed, it has been conceded, that such is the law, unless some alteration has been effected in it, by the act of 1810, ch. 34.

But the design of the legislature, in the enactment of that law, is so distinctly marked, and points so clearly to one

object, as to leave us no room to believe for a moment, that they intended to enlarge the power of devising, or to affect it in any manner. They only desired to remedy inconvenien- ces, growing out of the death of legatees, before the will could operate.

The law after declaring, that no legacy shall fail to take effect by the death of the legatee, proceeds in the following words : " but every such legacy shall have the same effect, and operation in law, to transfer the right, as if the legatee had survived the testator." This clause was intended, barely to designate in what manner, the legacy falling in by the death of the legatee before the death of the testator, should pass. Having pronounced that it should not lapse, they deemed it necessary distinctly to point out the persons who should take, and they do this by saying, that the right shall vest, " as if the legatee had survived the testator." The sole object of the law, which was to prevent the lapsing of legacies, is accomplished by the designation of such as shall take them. The construction therefore, which would confer new testamentary powers, would be one beyond the design of the framers of the law, and not by any means called for, by any phraseology they have used.

The language that, " no legacy shall lapse by the death of the legatee," can only be understood, as referring to such legacies as failed by the common law to take effect by lapsing, and which, but for the death of the legatee, would have been available legacies. But the legacy of a possibility does not fail to take effect by the death of the legatee, but from an inherent defect in the subject matter of the bequest, which renders it incapable of being operated upon by a will.

If the above views be correct, the supposed difficulty, growing out of the residuary bequests of the testator, and testatrix, each to the other, cannot exist.

*Madam Volunbrun* dying first, all the estate she was capable of willing by her residuary bequest, passed to *M. Clery*, either actually, or potentially, and was conse- quently the subject of testamentary disposition.

*Madam Volunbrun* became *M. Clery's* residuary legatee, and her death, occurring before the will of *Clery* took effect, the act of 1810, ch. 34, steps in, saves the lapsing of the legacy, and vests it in her representatives.

The will of *Madam Volunbrun*, not operating to pass over *Clery's* residuary bequest, it cannot produce any effect in the cause, and is not touched or affected by the act of 1810, ch. 34.

But a question still arises upon this statute—Does the executor or administrator of the deceased legatee, or his distributees, take the legacy? The solution of this, depends upon the construction of the following words of the law, "but every such legacy shall have the same effect and operation in law to transfer the right, as if the legatee had survived the testator." As in the case of survivorship of the legatee, the testamentary bequest of the legacy, would have operated the complete transfer of the right to the legatee; so in case of his death, the right shall be transferred just as effectually: but to whom?

The time of the transfer, is the death of the testator; and as the legatee, died before the testator, he would not be the person meant, as the object of the statutory transfer. But the law refers to such persons then *in esse*, entitled by law to the distribution of the legatee's estate in case of intestacy, that is, his representatives.

The words of the law are, not that the legacy shall pass in the same manner as if the legatee had survived and died, but that a transfer should in all cases be operated, as if he had survived; that is, that the title to the legacy, should be as binding and operative in the one case as the other. As it was not intended, that the legatee not *in esse* at the time to take, should take the right, because being impossible, it would be absurd. We likewise think, that his executor or administrator could not take as assets, that which never could have been the testator's or intestate's. Had the legislature intended, that the legacy should become, and be considered as assets, belonging to the estate of the legatee, liable in the

due course of administration, we think it would not have been left to dubious construction, but would have been declared in unambiguous terms. The words, " as if he had survived," furnish no argument against this view, because they are barely used as words, comparing the title derived under the law, by the persons who are to take, with the title the legatee would have had, and assimilating them in point of legal operation and validity.

In accordance with the above views, a case was decided on the Eastern Shore, June Term, 1824.

The facts of that case were as follows: On the 2d November, 1812, *Sally Spence* made her will, and died on the 12th December, 1812. She bequeathed the *residuum* of her estate to *Mary Spence Gillis*, and appointed *Joseph Gillis* her executor, who accepted the trust. *Mary Spence* made her will, 28th of October, 1809, and died on 1st September, 1821. By this will, she made *Sally Spence* her residuary legatee. *Ara Spence* administered on the estate of *Mary Spence*, and after payment of all debts, &c. the residuum of her estate amounted to $900. *Joseph Gillis* executor of *Sally Spence*, instituted suit against *Ara Spence*, to recover the amount of this residuum; the county court gave judgment for the plaintiff, but upon appeal to the court of Appeals, this judgment was reversed, and the residuum was distributed among the representatives of *Sally Spence*. This case is decisive of the cause now before the court.

We accordingly think that the funds must remain in the hands of the administrator of *Clery*, who will be bound to distribute them after the payment of debts to the representatives of *Madam Volunbrun*.

*We* REVERSE *the* DECREE *of the* ORPHANS' COURT *and dismiss the Petition with costs.*

DECREE REVERSED.