JOSEPH HARRIS, EXECUTOR OF GWINN HARRIS, *vs.* ETHEL-
DRA J. HARRIS.—*December*, 1842.

Where the legatee of personal property dies before, and his widow survives,
the testator, she is entitled to the same proportion of it, as if her husband
had also survived him, and died intestate, as where there are children, to
one-third part.

APPEAL from the Orphans Court of *Charlès* County.

The appellee filed her petition before the said court, alleg-
ing that *Gwinn Harris* died in the year 1837. By his will, after
bequeathing to his sisters *Kitty Vincent* and *Violetta Barbour,*
each an annuity of $200 for life, and various legacies to nephews
and nieces, he devised as follows:

" I give and bequeath to my brothers, *Joseph Harris, John
Francis Harris, Nathan Harris* and *Morgan Harris,* and their
heirs, executors, administrators and assigns, all the rest and
residue of my estate, both real and personal, to be equally
divided amongst them, in equal proportions, share and share
alike."

The will then appointed *Joseph Harris* to be sole executor ;
was executed on the 9th June, 1834, and admitted to probat
on the 22nd August, 1837.

The petition alleged, that *Morgan Harris,* one of the lega-
tees, died in 1835, intestate, before the testator *Gwinn Harris,*
leaving the appellee, his widow, and the following children :
*Thomas B.* and *Gwinn Harris,* of full age, and *Nancy, John G.*
and *Chapman Harris,* minors, and prayed the order of the
court to direct in what manner distribution is to be made
amongst the representatives of *Morgan Harris,* deceased.

*Joseph Harris,* executor, under the will of *Gwinn Harris,*
answered the petition—admitted the facts alleged, but contested
the right of the appellee to any portion of the property be-
queathed to her late husband, and maintained that his children
were exclusively entitled.

The orphans court decreed *pro forma,* that the executor of
*G. H.,* in the distribution of his personal estate, pay to the
appellee, his widow, one-third part of one-fourth of the residue
of said estate.

*Joseph Harris,* the executor of *Gwinn Harris,* appealed to this court.

The cause was submitted on notes to BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, J.

By P. W. CRAIN, for the appellant.

This is an appeal from the orphans court of *Charles* county, from a *pro forma* judgment, made upon petition, by the consent of parties. It is an amicable proceeding, instituted for the purpose of satisfying some of the legatees upon the question, whether the widow of *Morgan Harris* is entitled to a share of the personal estate of *Gwinn Harris. Gwinn Harris* executed his last will and testament in June, 1834, which was duly admitted to record in the orphans court of *Charles* county, by which he bequeathed to *Morgan Harris* one-fourth of his estate, after deducting the payment of certain legacies. *Morgan Harris* died in 1835, leaving a widow and five children. *Gwinn Harris,* the testator, survived *Morgan Harris,* and departed this life in August, 1837. By consent of parties, the orphans court of *Charles* county decreed, that *Etheldra J. Harris* should be paid by *Joseph Harris,* the executor of *Gwinn Harris,* one-third part of one-fourth of the residue of the personal estate of *Gwinn Harris.*

It is contended by the children of *Morgan Harris,* that his widow is not entitled to any portion of the personal estate of *Gwinn Harris.* No right or estate in the property was transmitted to *Morgan Harris,* in his life time, and that his widow, *Etheldra J. Harris,* cannot legally claim, except through her husband, *Morgan Harris. Morgan Harris* had not such an interest in the property devised by *Gwinn Harris,* as to have devised or transferred it by any act of his. The time of the transfer of the property is the death of the testator. The act of 1810, chap. 34, was designed to remedy inconveniences growing out of the death of legatees before the will could operate. 7 *Gill & John.* 366.

The estate and interest devised and bequeathed by *Gwinn Harris* to *Morgan Harris* will not be considered assets of

*Morgan Harris*, to go into the hands of his administrator, and to be distributed by him, but is transferred to those who are entitled to the same, as his next of kin.

It is contended, that as the legacy does not constitute a part of the personal estate of *Morgan Harris*, his widow is not entitled to any portion of it.

By T. S. ALEXANDER, for the appellee.

*Morgan Harris*, the legatee, having died in the life time of *Gwinn Harris*, the testator, the question arises, who are entitled to the legacy bequeathed by the last will of the latter to the former? The orphans court of *Charles* county decreed, that it should be distributed amongst the widow and children of the legatee, deceased, who were at the time of the testator's death, the representatives of the legatee, and as such, entitled to distribution of his personal estate. The present appeal is taken to contest the right of the widow to any share of this legacy, on the ground, as it would seem, from the statement filed on behalf of the appellant, that she is not one of the next of kin of her deceased husband. The answer to this objection is short, and it is believed, conclusive. There is nothing in the act of 1810, chap. 34, nor in the opinion of this court, in the case of *Glenn vs. Belt*, 7 *G. & J.* 363, which requires the distribution in such case to be made amongst "the next of kin" of the deceased legatee. The act provides generally, that no legacy shall lapse by reason of the death of any legatee, in the life time of the testator; but every such legacy shall have the same effect and operation in law, to transfer the right, estate, or interest in the property mentioned in such bequest, as if such legatee had survived the testator. And the opinion delivered in the case above referred to, shows, that the effect and operation of the act is to transfer the legacy "to such persons *in esse* "(at the death of the testator as are) entitled, by law to the "distribution of the legatee's estate, in case of intestacy, that "is, his representatives." Who are the representatives? That is, who would be entitled by law to share in the distribution of the estate of the legatee, in case he had died intestate imme-

diately after the death of the testator? and not who were at that time his next of kin? is the proper inquiry. Now the act of 1798, chap. 101, sub. chap. 11, secures to the widow where the intestate left children, one-third part, and if he left no children, one-half part of the residuum of his estate. She is then "a representative," and as such, "entitled by law to share in the distribution" of her deceased husband's estate.

By the Court—                              decree affirmed.

WILLIAM RICHARDSON *vs.* MICHAEL STILLINGER.—*December*, 1842.

By the well established practice of the Court of Chancery, no cause is ready for hearing, until the commission under which testimony has been taken, has been returned to the chancery office, and there remained for the period of one entire term.

By the rules of *Baltimore* county court, the commission and testimony must remain in court for the period of twenty days before the case is ready for hearing.

Where a commission was sued out on the 14th; returned on the 17th; removed to the Court of Chancery from *B.* county court on the 22nd, and a decree passed on the 24th of the same month, the decree was prematurely passed under the act of 1820, chap. 161.

The general rule is, that a court of equity is not to be resorted to for redress where full and complete remedy may be obtained at law.

There are some subjects over which courts of law and equity exercise concurrent power : such as fraud and matters of account.

Where plain, adequate and complete remedy may be had at law, a court of equity ought not to be resorted to.

If the personal estate of a deceased vendee is sufficient to discharge the vendor's equitable lien for a balance of unpaid purchase money, due for land sold, the real estate ought not to be sold for that purpose.

A bill in equity can be filed to enforce the vendor's lien, only when the complainant has exhausted his remedy at law, or where he avers such facts as will show, that he cannot have a full, complete and adequate remedy at law.

In requiring a vendor to exhaust his legal remedies, or show that he has none before proceeding in equity to enforce his equitable lien for the unpaid balance of the purchase money, he is not required to proceed by ejectment to re-possess himself of the land sold; nor by way of attachment or *fieri facias* to seize and sell the land sold by him in the hands of the vendee.

A court of equity never requires a complainant to do a nugatory act, nor an act which may impair his equitable rights.