## GEORGE P. VOGEL ET AL. *vs.* RICHARD TURNT.

*Statute to Prevent Lapsing of Legacy—Prior Death of Lega-
tee—Testamentary Intention—Legacy Passes to Next of
Kin of Legatee Pre-Deceasing Testator, and Not to
Personal Representatives—Right of Surviving
Husband in Land and Personal Property De-
vised and Bequeathed to His Wife,
Who Died Before Testator.*

Although Code, Art. 93, sec. 320, provides in broad terms that no devise or legacy shall lapse by reason of the death of any devisee or legatee in the lifetime of the testator, yet, where it appears from the will that it was the intention of the testator that only the person named as legatee should take, and not his personal representatives under the statute, effect will be given to that intention, and in such case the statute does not save the legacy from being defeated, but the right of the legatee depends upon his being alive at the time fixed for payment.

Since a will must be treated as being made with reference to the existing law, the presumption is that a testator intended that if a legatee pre-deceased him, the next of kin of the legatee should take under the statute, and the burden of showing a different testamentary intention is upon those who allege that the legacy lapses.

A testator, who had three sons and one married daughter at the time he made his will, gave pecuniary legacies to two of the sons to equalize them with amounts loaned to the other children, which debts he forgave. He then devised certain real

estate to his daughter, to be held by her absolutely as if she were a *feme sole*. The residue of the estate was given to his four children, to be equally divided between them, their heirs, personal representatives and assigns. The daughter died before the testator, intestate, without children, and leaving a husband surviving. *Held,* that there is nothing in the will to indicate an intention on the part of the testator that the gifts to the daughter should only take effect in case she survived him, and that consequently the devise and legacy to her are saved from lapsing by virtue of the statute.

When a legatee dies before the testator and the legacy is saved from lapsing by Code, Art. 93, sec. 320, the legacy is not a part of the assets of the estate of the legatee, and is not to be distributed to his personal representatives, but it passes to the persons in being who are then entitled as next of kin of the legatee under the statute of distribution, as in case of intestacy.

Where a legacy was given to a married woman who died before the testator, intestate and without issue, but leaving brothers and a husband surviving, the husband is entitled to one-half of the legacy, under Code, Art. 93, sec. 121.

Land was devised to a married woman, who died before the testator, leaving a husband and brothers surviving. Under the Statute of Descents, a husband does not inherit the real estate of his wife, if she leaves kindred. Under Code, Art. 45, sec. 7 (Act of 1898, Chap. 457), a husband acquires by virtue of his marriage an estate for life in one-third of the lands held or owned by his wife at any time during the marriage. Code, Art. 93, sec. 320, provides that devises and bequests shall not lapse by reason of the death of the devisee in the lifetime of the testator, but every such devise or legacy shall have the same effect and operation in law to transfer the right, estate and interest in the property as if such devisee or legatee had survived the testator. *Held,* that although the wife did not own or hold the land at any time during the marriage, yet, under Code, Art. 93, sec. 320; the devise was transferred at the death of the testator to those who were then entitled to take what she would have taken if living, and as what she would have taken would be subject to her husband's interest

therein, under Code, Art. 45, sec. 7, her heirs take subject to that right, and that the husband is now entitled to an estate for life in one-third of the land devised.

*Decided February 11th, 1909.*

Appeal from the Circuit Court of Baltimore City (HEUIS-LER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON. JJ.

*Frederick W. Story,* for the appellants.

*Lewis Hochheimer,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

Philip Rudolph Vogel, Sr., died in Baltimore City on March 10th, 1907, leaving a last will and testament which was executed September 23rd, 1901. When he made the will he had three sons living, Philip R., Charles W. and George P., and one daughter, Kate Margaret Turnt, wife of Richard Turnt, but two months before his death his daughter died: In the first item of the will, the testator stated that he had loaned his son Philip $10,000 and his daughter Kate $3,000, none of which had been repaid to him, and then said: "And whereas, taking into consideration the present needs of my said son, Philip Rudolph, and my said daughter, Kate Margaret, and their families, and desiring to make provision for my two younger children, without injustice to any of my said four children; now, therefore, I give," etc. He then gave $5,000 to each of his two sons, Charles W. and George P., and made those legacies chargeable upon the whole of his estate owned by him at the time of his death, without reckoning therein the principal or interest of the sums his son Philip and his daughter and her husband had had, concern-

ing which he said: "all of which I hereby forgive for the reasons aforesaid."

By the second item, he left to his daughter, her heirs and assigns, absolutely, real estate and ground rents mentioned and described in two deeds referred to, "After the said two sums of five thousand dollars each (in all ten thousand dollars) have been deducted, and not before," and concluded that item by saying: "To equalize the share of my said daughter Kate according to my desire and for the reasons aforesaid; all the share of my said daughter Kate to be held by her absolutely as if she were *feme sole.*"

The third item begins by saying: "After the first and second items of this my will as hereinbefore given, devised and bequeathed have been deducted, and not before," and he then gave the residue of his estate to his "four children to be equally divided between them, share and share alike, their several and respective heirs, personal representatives and assigns, absolutely forever." Then in the fourth item it is said: "And for as much as it may be necessary to sell real estate to pay the legacies and make the division aforesaid, I hereby authorize my executors to sell all and any part of my real estate (the real estate mentioned in the second item alone excepted), and convert the same into cash," etc., and by the fifth item he appointed his executors.

The executors and his three sons Philip R., Charles W. and George P. Vogel, and their respective wives, filed a bill in equity against Richard Turnt, the husband of the testator's daughter, in which they prayed for a construction of the will, that the rights of the several parties to the legacies and bequests under the will be fixed and determined and that the executors be instructed as to the same, and also for general relief. Richard Turnt filed an answer, in which he averred that under the terms of the will an estate in the property bequeathed to his wife vested in her, and that in consequence of her having predeceased the testator, he was entitled to take such property, as her surviving husband. Some testimony was taken in which the dates of the deaths of the tes-

tator and the daughter were proven, together with some other matters. It is admitted that the daughter died intestate, without leaving any children or descendants.

The Court below passed a decree: (1) assuming jurisdiction and control over the administration and settlement of the estate; (2) declaring that the devise, legacy and bequest to Mrs. Turnt did not lapse or fail of taking effect by reason of her death in the lifetime of the testator, but that they have the same effect and operation in law to transfer her right and interest in the property mentioned in the will as if she had survived the testator; (3) directing that distribution of her share is to be made as follows: "The personal estate to her personal representative, appointed or to be appointed according to law, one-half thereof to be apportioned to her said surviving husband; her real estate interest, to the extent of a husband's one-third thereof, to be apportioned to her said husband;" (4) requiring the executors to render a full and just inventory and account of the estate, real and personal, to the Court; (5) referring the case to an auditor and master; and (6) ordering the costs to be paid out of the estate. From that decree this appeal was taken by the plaintiffs.

The theory of the appellants is that the intention of the testator, as shown by the will and such surrounding circumstances as may be considered, was that the devise and bequest to Mrs. Turnt were not to take effect unless she survived the testator. The appellee relies on sec. 320 of Art. 93 of the Code (1904) which provides that: "No devise, legacy or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee * * * in the lifetime of the testator, but every such devise, legacy or bequest shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator." It must be admitted that the language of that statute is very broad, but it is contended that the will itself shows an intention on the part of the testator that his daughter's share should not be controlled by the statute. It is said

in 18 *Am. & Eng. Ency. of Law,* 758, that: "Statutes for the prevention of lapses are intended, not to defeat the will, but to supplement it, and ought not to control if it be inconsistent with the will to have them control." It must be conceded that when a testator manifests an intention that the beneficiary named by him shall take, and not those who would otherwise take by virtue of such a statute as ours, the statute will not control. In *Helms* v. *Franciscus,* 2 Bland, 560, it was said that: "If a legacy be so given, that the legatee's right depends on his being alive at the time fixed for its payment * * * the legacy is lost," and in *Dulany* v. *Middleton,* 72 Md. 74, the terms of the will were recognized as controlling, although they were so clear that there was little room to doubt them. Other cases might be cited to sustain that doctrine, but as was also said in 18 *Am. & Eng. Ency. of Law,* 758, immediately following the above quotation: "But it must be presumed that the testator made the will in view of the statute and that he intended to have the statute prevail, unless the contrary appeared. The burden of showing the contrary is on the party claiming that the statute does not apply, and this burden is not lifted when it is made to appear that the legacies were prompted by personal regard for the legatees, for the fact that they were so prompted is not at all inconsistent with an intent to have them go to the descendants of the legatees in case the legatees themselves die before the testator."

The language of the will relied on by the appellants is by no means sufficient to overcome the effect of the statute. For example, when the testator said what we have quoted above from the first item, and then left the legacies of $5,000 to each of the two younger children, there was certainly no indication of his intention to limit such gifts as he afterwards made to his daughter to her enjoyment of them. On the contrary he was taking into consideration the present needs of his son Philip and his daughter, *"and their families."* The only family she had was her husband—the very person the appellants now seek to exclude. So when he gave her, "her heirs

and assigns absolutely" the real estate and ground rents mentioned, and concluded with "all the share of any said daughter Kate to be held by her absolutely as if she were a *feme sole*," he did no more than the Act of 1898, Ch. 457 (now sec. 4 of Art. 45 of the Code) does. That says: "Married women shall hold all their property of every description for their separate use, as fully as if they were unmarried, and shall have all the power to dispose of by deed, mortgage, lease, will or any other instruments that husbands have to dispose of their property, and no more." The terms of the will strengthen, rather than weaken, the position taken by the appellee. If the testator had desired to exclude his daughter's husband from the enjoyment of what he devised and bequeathed to her, he could have left her share for life, or could have put it in trust, and very easily have accomplished such purpose. But he not only did not adopt that course, but he forgave his daughter and her husband the debt they owed him, and the evidence, taken by the appellants, shows that he knew that his daughter was dead and that he was gratified when he heard that her body had been taken to Baltimore and buried in his lot. So if we make use of the evidence offered by them, it rather tends to show the very opposite of their contention, in so far as it has any effect on the question. Indeed the will itself indicates a clear intention to give the testator's daughter the ground rents referred to, and to make her one of the residuary legatees and devisees, and there is an entire absence of a desire to exclude her husband, or any other person who might by law or otherwise become interested in the property left her.

Nor is there any difficulty about the decisions cited by the appellants. In *Craycroft* v. *Craycroft,* 6 H. & J. 54, the testator devised the lands to his three sons, in joint tenancy. One of them died before the testator, and the Court held, what must be perfectly clear, that the survivors took. It was held that it was not a lapsed devise, and hence the statute on that subject had no application. In *Billingsley* v. *Tongue,* 9 Md. 575, our predecessors held that the statute applied to

*lapsed* devises and legacies, and not to those which were *void*—determining the law of this State to be that if the devisee or legatee is dead at the date of making the will, the devise or legacy is void. Of course there is no doubt that if an attempted devise or legacy is void, it is not saved by this statute, which was only intended to give effect to those which were valid when made, and not to make valid those which were originally void. Other similar cases might be cited, but they do not reach the question involved.

As the testator left real property to his daughter and also made her residuary legatee, and the decree deals with both personalty and realty, we will consider the two classes of property separately. First, as to the personalty. We do not understand why the decree, in providing for the distribution of the daughter's share under the will declared: "The personal estate to her personal representative, appointed or to be appointed according to law, one-half thereof to be apportioned to her said surviving husband." Apparently that contemplates the appointment of an administrator to take her share in the personal property, if there be any, but the law of this State is well settled to the contrary. In the leading case on the subject, *Glenn* v. *Belt*, 7 G. & J. 362, it was said, in referring to what is now sec. 320 of Art. 93: "The time of the transfer is the death of the testator; and as the legatee died before the testator, he would not be the person meant, as the object of the statutory transfer. But the law refers to such persons then *in esse,* entitled by law to the distribution of the legatee's estate in case of intestacy, that is, his representatives. The words of the law are, not that the legacy shall pass in the same manner as if the legatee had survived and died, but that a transfer should in all cases be operated, as if he had survived; that is, that the title to the legacy should be as binding and operative in the one case as the other. As it was not intended that the legatee not *in esse* at the time to take the right, because being impossible, it would be absurd, *we likewise think that his executor or administrator could not take as assets that which never could have been the testator's*

*or intestate's."* See also *Wallace* v. *DuBois,* 65 Md. 161, in
which it was held that a legacy to a legatee who died in the
lifetime of the testator passed directly to the daughter of the
legatee, and that "it constituted no part of the assets in the
hands of his executor or administrator. His daughter took it
by force of the statute." The cases of *Halsey* v. *Convention,*
75 Md. 283, and *Garrison* v. *Hill,* 81 Md. 211, also held that
legacies, under such circumstances, passed to the persons en-
titled to the distribution of the legatees' estates in case of
intestacy.

Sec. 121 of Art. 93, under sub-title, Distribution, provides
that: "If there be a surviving husband or a widow, as the
case may be, and no child or descendant of the intestate, but
the said intestate shall leave a father or mother, or brother
or sister, or child of a brother or sister, the surviving hus-
band or widow, as the case may be, shall have one-half." In
this case Mrs. Turnt left brothers, and as under the construc-
tion given the statute in *Glenn* v. *Belt, supra,* and followed
in other cases, those *"in esse* entitled by law to the distribu-
tion of the legatee's estate in case of intestacy" take, and as
under the above section (121 of Art. 93) the surviving hus-
band is entitled to one-half in the distribution, that part of
the decree is correct. We might add that in *Harris* v. *Harris,*
12 G. & J. 474, a residuary legatee had died before the tes-
tator, leaving a widow and children, and on petition of the
widow the executor of the testator was required by the Or-
phans' Court in the distribution of the personal estate, to pay
her one-third of the share her husband would have been en-
titled to, if he had survived—that being the proportion a
widow was entitled to when there were children—and this
Court affirmed that decree. It would seem to be clear, there-
fore, that the appellee is entitled to one-half of the personal
property to be distributed, as he is by the express terms of
our statute entitled to one-half of the surplus of the intes-
tate's estate after the debts have been discharged (where there
are no children or descendants), and the statute of distribu-

tion of personal estates governs, as°held in *Glenn* v. *Belt,
supra.*

Although the question was not raised at the argument or
referred to in the briefs, we must confess that we have had
some difficulty in determining whether or not the appellee
had any interest in the real estate. Under our Statute of De-
scents a husband does not inherit the real estate of his wife,
or any part thereof, excepting when there are no descendants
or kindred of the intestate to take the estate. It then goes to
the husband or wife, as the case may be, under sec. 23 of Art.
46 of the Code, and the only other interest which the husband
has in his wife's real property is what is now known as "the
husband's dower," which is the same thing as the widow's
dower at common law, excepting in so far as changed by stat-
ute. See sec. 7 of Art. 45 of the Code. By that section he
acquires "by virtue of his marriage an estate for his life in
one-third of the lands held or owned by his wife at any time
during the marriage, whether by legal or equitable title, or
whether held by her at the time of her death or not," etc.
Mrs. Turnt did not own or hold this property "at any time
during the marriage." She could not have devised it, *Glenn*
v. *Belt, supra,* and *Halsey* v. *Convention, supra,* and indeed
she had no interest in it, as was in effect decided by those and
other cases we have cited. Nor does the expression "whether
held by her at the time of her death or not," at the end of the
above quotation, affect this case, for that was evidently insert-
ed to apply to equitable titles, as it had been held in this
State that the statute giving a widow dower in lands held by
equitable title in the husband did not apply to them, if the
lands had been disposed of in the lifetime of the husband.
The Act of 1898, Ch. 457, which made such radical changes
in the rights of husbands and wives, inserted a similar pro-
vision in the section referring to a widow's dower. Sec. 6
of Art. 45.

We are therefore brought to the question whether sec. 320
of Art. 93 entitles the appellee to the third in the real estate,
as allowed by the decree of the lower Court, for unless it does

his claim to that must be denied. We have found no authorities out of the State which aid us materially in determining the question, and we have no decision in this State which is absolutely conclusive of it. Very few of the States, if any, have statutes precisely like ours, although most, if not all, have enacted some kind of legislation to prevent legacies from lapsing. Some of them only save the legacies for the benefit of children or descendants, others for the benefit of descendants or designated relatives and still others have used terms such as "heirs," "relations," etc. See 18 *Am. & Eng. Ency. of Law,* 755-758, for many illustrations.

It will be observed that while sec. 320 of Art. 93 says that "every such devise, legacy or bequest shall have the same effect and operation in law *to transfer* the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator," it does not in terms name the persons or classes *to whom* the transfer is to be made. But in *Glenn v. Belt, supra,* it was said, in reference to personalty, that "the law refers to such persons then *in esse* entitled by law to the distribution of the legatee's estate in case of intestacy—that is, his representatives." In a prior part of the opinion the Court, after quoting the latter part of the statute, said: "This clause was intended barely to designate in what manner the legacy falling in by the death of the legatee before the death of the testator should pass. Having pronounced that it should not lapse, they deemed it necessary distinctly to point out the persons who should take, and they do that by saying that the right shall vest 'as if the legatee had survived the testator.'" If this devisee "had survived the testator," as "the time of the transfer is the death of the testator," as decided in *Glenn v. Belt,* the dower interest of the appellee would have attached to her right in this real property at the death of Mr. Vogel. In other words, as the devise was transferred at the detah of the testator as if Mrs. Turnt was still living, it was transferred to those who were then entitled to take what she would have taken if she had survived her father, and as what she would then have

taken would have been subject to her husband's right of dower, her heirs must take the real estate subject to that right. The statute must have intended that a devisee, who was a married woman when she died, would for the purposes of its provisions, be still regarded as a married woman at the death of the testator, if her husband was then living, when it said "if such devisee or legatee had survived the testator."

The case of *Harris* v. *Harris,* 12 G. & J. 474, although involving personal property only, goes very far towards sustaining the conclusion reached by us, and while possibly not controlling, is so similar in its results that it would be difficult to reconcile any other conclusion by us on this point with that case. No opinion was filed, but the arguments of counsel show that the real controversy was whether personal property bequeathed to a legatee who died before the testator went to the legatee's next of kin or to his representatives. It was in effect conceded that a widow was not of the next of kin, but the result of the case was to hold that she was *as widow* entitled to óne-third of the residuum, and hence was a "representative" as meant in *Glenn* v. *Belt,* which had been previously decided. The syllabus in Mr. Brantly's annotated edition of this case is: "Where the legatee of personal property dies before, and his widow survives the testator, she is entitled to the same proportion of it, as if her husband had also survived him and died intestate, as where there are children, to one-third part." As our statute in force at that time directed the administrator to make distribution of the surplus, after the payment of debts, and provided that one-third be distributed to the widow where there was a child or descendant, one-half where there was no child or descendant, etc., it might have been argued that a widow was only entitled to take where there was an administration—that it was only payable out of assets of a decedent's estate. but it was held that she was entitled *as widow,* although the legacy did not go into the hands of the administrator. So in regard to a devise of real property, although the devisee did not in fact own or hold the property in her lifetime, and consequently not during their

marriage, the statute transfers it to such persons as would have been entitled to it if she had survived the testator—those persons are her heirs, but they take subject to the dower of the husband which he would have had if his wife had survived the testator.

It follows from what we have said that we must affirm the decree, excepting in so far as it provides for the distribution of the personal estate to the "personal representative appointed or to be appointed according to law," which was doubtless inadvertently inserted, and we will reverse the decree as to that.

> *Decree affirmed in part and reversed in part, costs above and below to be paid out of the estate.*