# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed August 20, 1912.

HEMSLEY, ET AL.,
VS.
McKIM, ET AL.

*Messrs. Soper and Emory* for plaintiffs.

*Lemon & Clotworthy, McLane, Pegram & Frank*, and *William S. Bryan, Jr.*, for defendants.

first part they are to put my interest in my house and lot on Saint Paul street and my shares in coal companies and interest in coal mines in Schuylkill County, Pennsylvania. Into the second part they are to put all the balance of my estate and property except my household furniture and silverware and my articles of personal use that I may not dispose of during my life, all of which they are to divide equally among my four brothers and my nieces, Maria Kerr and Elizabeth Tilghman Hemsley, who are to take one-fifth thereof, the share of their father, Tilton Hemsley, deceased. The first mentioned of the two above described equal parts of the residue of my estate my executors are to assign pay over, or convey as follows: One-half thereof or one quarter of the residue to my friend and cousin, Hollins McKim, and one-quarter to the following descendants of Isaac McKim and their heirs in such manner that one-half of the said one-quarter shall go to S. Sterrett McKim, who bears my husband's name and the other half of the said one-quarter in to equal parts, one to Louisa Murdoch, wife of S. Davies Murdoch and her heirs, and the other to Letitia L. McKim and her heirs, daughter of the late Alexander McKim by his wife, Elize Latrobe McKim. The remaining one-half of my estate constituted as above described my executors will pay over, assign and convey as follows: One-fifth to each of my half brothers Oswald T. and Walter Hemsley, and their heirs, and three-fifths to the Safe Deposit and Trust Company of Baltimore City in trust for the following uses and purposes; that is to say: To hold one-fifth for the benefit of my brother William Wright Hemsely, and to pay the net income over to him during his life or until the contingency hereinafter mentioned may occur; one-fifth in like trust for my brother Charles V., and one-half of one-fifth in like trust for each of my two nieces. Maria Kerr Hemsley and Elizabeth Tilghman Hemsley, to pay the net income to them respectively until they respectively reach the age of thirty years, when their shares shall be paid and conveyed to them absolutely. And at the death of each of my brothers, William and Charles, their respective shares are to be held in trust by the said trustee, or any duly appointed

## HARLAN, J.—

The bill in this case was filed by the executors of the estate of Mary H. Sterett, deceased, for the purpose of having the court assume jurisdiction of the further administration and settlement of her estate, for a construction of her will and for the protection of the executors in discharging their duties, according to the true meaning and interpretation of the will as ascertained by the court, that the sales of the estate may be made and the same divided and distributed under the orders and direction of the court and for other relief.

The first question as to which the decision of the court is asked under the proceedings, as they now stand, involves the true meaning and construction of the will in connection with the division which the executors are empowered and directed to make of the residue of her estate. The will is brief and is set forth in extenso in the bill and a certified copy filed as Complainants Exhibit No. 1, viz:

"I, Mary H. Sterett, of Baltimore City, to make, publish and declare this my last will and testament in manner following:

First: I devise and bequeath all my estate, real personal or mixed and wherever situate to my executors hereinafter named, whom I direct to pay all my just debts, funeral expenses and costs of administration. and also to erect over my grave in my lot in Greenmount Cemetery a simple tombstone to mark my resting place.

Second: The residue of my estate I empower and direct my executors to divide into two equal parts. In the

successor to the trustee in trust for their respective children now living to pay the net income to them every year, and as said children respectively reach the age of thirty years their respective shares shall be paid and conveyed to them absolutely. And until any judgment be rendered against either of my said brothers, Charles and William, or any conveyance be made by either of them of their respective interests under this will, whether in whole or in part, their respective life estates shall continue, but thereupon the brother's share thus conveyed or attempted to be taken or conveyed shall immediately pass to that brother's children as aforesaid as if he had died on the day before said conveyance were made or judgment were entered. And I empower both the said trustee or its successors in the trust, and also my executors hereinafter named to do any act needful to carry out the directions and bequests herein: Particularly to divide, sell, convey, invest or reinvest the principal of my estate without any obligation upon the purchaser at any sale to see to the application of the purchase money. Lastly I appoint my brother Walter Hemsley and my cousin John Hemsley Johnson executors of this my last will and I revoke all wills by me heretofore executed. Witness my hand this sixteenth day of January in the year 1897.

(Signed)    MARY H. STERETT."

It appears from the proof that if the executors, in dividing the residue into two parts, put into the first part, only the interest of the testatrix in her house and lot on Saint Paul street, her shares in Coal Companies and her interest in coal mines in Schuylkill County, Pennsylvania, and put into the second part, all of the balance of her estate and property, except her household furniture and silverware and articles of personal use not disposed of during her life, instead of the first part being equal to the second part, it would probably be less than one-half as large as the second part. It is contended on behalf of certain of the defendants who would benefit by this inequality of division, that while the testatrix directed her executors to divide the residue of her estate "into two equal parts," that having specified the items of her estate, which are to

be put in the first part and having directed all of the balance of her estate to be put in the second part, the specification must control and if an inequality in the parts results, it must be taken to have been so intended by the testatrix. I cannot consent to this contention. The idea of equality of division is apparent throughout the whole will. If the testatrix had meant the McKim connection among whom "the first mentioned of the two above described equal parts of the residue of her estate" is divided to have only her interest in her house and lot on St. Paul street, her shares in coal companies and interest in coal mines, why should she have directed the executors to divide the residue of her estate in two equal parts? why should she not have said "into two parts" and why should she have continued to speak of two "equal" parts and give to Mr. Hollins McKim one-half thereof or one-quarter of the residue, if his share instead of being one-quarter of the residue, was to be not more than an eighth or a tenth, of the residue?

It is to be noted that the testatrix nowhere says the first part is to consist of the house and lot on St. Paul street, her shares in coal companies and interest in coal mines. Her words are "in the first part they are to put my house and lot on St. Paul street, etc." The whole difficulty seems to arise out of the fact that immediately following the above expression, occurs the words "into the second part they are to put all of the balance of my estate and property except," etc. But the word balance as here used does not necessarily and conclusively refer to all of her estate except the house and lot on St. Paul street and the shares in coal mines, etc. Having previously said the parts were to be equal parts, and in the first part was to be included certain specific property, it may well be taken to refer to all the remainder of her estate left after the first equal part had been set aside. The occasion for the use of the term was that the testatrix in a somewhat awkward way undertook to exclude from the residue of her estate, which she desired to be equally divided between her husband's connections and her own relatives, certain articles of jewelry and personal belongings, which she desired should go to her own rela-

tions, and not be taken into account in making up the two equal parts. This she did by saying "all the balance of my estate and property except," etc. I hold therefore that by the true interpretation of the will of the testatrix, it is the duty of the executors excluding the property above indicated, as intended to be excepted, in making up the two equal parts into which the residue of the estate is to be divided, to put into the first part sufficient other property of the testatrix, as will with the house and lot on Saint Paul street and the shares in coal companies and interest in coal mines in Schuylkill County, Pennsylvania, make a division of the residue of the estate into two equal parts.

The next question for decision is whether the testamentary devise or legacy to Hollins McKim lapsed under Section 320 of Article 93, Code of Public General Laws, amended by Act of 1910, Chapter 37, page 323. The will of Mrs. Sterett was executed January 16th, 1897. Hollins McKim died May 17th, 1911, and Mrs. Sterett died September 10th, 1911. Under the law, as it existed at the date of the execution of the will and down to March 31st, 1910, when the Act of 1910 became effective, the devise or legacy to Hollins McKim would not have lapsed by his death during the life of the testatrix, but the property mentioned in the devise or legacy would have passed in the same manner as if he had survived the testatrix and died intestate, to the persons then in the esse, entitled by law to take as heirs or distributees of the legatee's estate in case of intestacy; nor would his executor or administrator have taken as assents. Glenn vs. Belit, 7 G. & J., 36; Halsey vs. Convention, 75 Md., 275; Vogen vs. Trust, 110 Md., 192. The Act of 1910, Chapter 37, page 323 repeals and re-enacts Section 320 of Article 93 of the Code of Public General Laws, so as to read as follows:

"No devise or legacy or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee (actually and specially named as devisee or legatee, or who is or shall be mentioned, described or in any manner referred to, or designated or identified as devisee or legatee in any will, testament or codicil) in the lifetime of the testator, except as hereinafter provided, but every such devise,

legacy or bequest shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator; provided, however, that this Act shall not apply to the last will, testament or codicill of any person dying after the passage of this act, where the maker of said last will, testament or codicil, after the execution thereof and before the death of such devisee or legatee, shall become insane or otherwise incompetent to cancel, revoke, annul, obliterate, or alter said last will, testament or codicil."

It is contended in this case, by those who would benefit by the lapsing of this devise or legacy to Hollins McKim, that there exists in this case all the conditions mentioned in the proviso of the Act of 1910, which take the devise or legacy to Hollins McKim out of the saving clause of the statute, and that the same lapses, and as to the property mentioned therein, Mrs. Sterett died intestate and the same will pass as to the realty direct to her heirs, and as to the personalty to her personal representatives. The proviso is that the Act shall not apply (that is the legacy shall not be saved from lapsing by the Act) as to "the last will of a person dying after the passage of the act, where the maker of said last will, etc., after the execution thereof and before the death of such devisee or legatee, shall become insane or otherwise incompetent to cancel, revoke, annul, obliterate or alter said last will and testament." Mrs. Sterett had executed her will long before the passage of the Act (viz: in 1907. She suffered a stroke of apoplexy in the Fall of 1909, and her mental condition and capacity to make a will or alter one from that time on to the time of her death, has been the subject of much conflicting testimony in the case. This stroke was after the execution of the will and it was before the death of Hollins McKim, and if it rendered her, within the meaning of the Act, incompetent to cancel, revoke, annul, obliterate or alter her will, the legacy must be taken out of the saving clause and must lapse unless the act is to be construed to be applicable only to wills executed after the passage of the Act, or if executed before the passage of the Act, shall become insane or in-

competent to cancel, etc., the said will before the death of the devisee or legatee. It does not seem to me that the legislature meant the proviso to apply only to wills *executed after its passage.* If they had meant this, they would have said "provided, however, that this act shall not apply to last wills and testaments made after the passage of the act where the maker of the said last will, testament or codicil, after the execution thereof and before the death of such devisee or legatee shall become insane, etc." Instead the words are "shall not apply to the last will, etc., of any person dying after the passage of the act." But that the law makers meant the proviso to apply to wills executed before the passage of the law where the maker of the will was then insane or incompetent to alter the same, is another question. The words of the law are: "Where the maker of the will, after the execution thereof and before the death of such devisee or legatee *shall become* insane, etc. These words are words of futurity, they speak of something that *shall* happen, not that shall have already happened. That it was competent for the legislature to provide that the wills of persons then insane, though made when sane, or any part of the same should not be operative, as they would, had the maker have died before the change in the law became effective, cannot be denied as the persons designated as beneficiaries have no vested right and the right to make a testamentary disposition of one's property is not a vested right; but for the legislature to thus alter the effect of wills already made in the case of persons whose mental condition precludes them from a further expression of their wishes, as to those who should share in their property, is such a radical step, that the intention to take it ought not to be imputed to the law makers, unless no other construction of the Statute is permissible. A law will not be construed retroactive unless the intent to make it retroactive is so plain that it cannot be escaped. It seems to me therefore that this proviso should be construed to apply as to wills made before the passage of the act, only to those where the maker shall after the passage of the act, become insane, before the death of the legatee, and not to the wills of persons dying after the pas-

sage of the act, where the maker of the will was at the time of its passage insane or incompetent to alter the same and so continued down to her death. Mrs. Sterett was adjudicated non-compos mentis in the Fall of 1910, but her mental incapacity, if it amounted to incompetency to alter or revoke her will, began with her stroke of apoplexy in the Fall of 1909, and under all the proof, she must be considered, if incompetent at all, incompetent at the time of the passage of the act of 1910, and continuously incompetent down to her death. I hold therefore that the legacy to Hollins McKim did not lapse.

The next question in this case, is whether the executors can withhold or set off against the legacies of Hollins McKim and S. Sterett McKim or either of these legacies, the unpaid portion of an indebtedness to Mrs. Sterett, by the banking firm of McKim & Company, of which Hollins McKim and S. Sterett McKim were members. Receivers were appointed for this firm on July 1st, 1907. Mrs. Sterett was a depositor with the firm at the time of the failure, in the amount of $12,-587.76, and while devidends have been paid by the receivers upon the indebtedness from time to time, the indebtedness still amounts to a large sum.

So far as the legacy to Hollins McKim is concerned it seems clear that the executors have no right of set off. Under the Maryland laws as heretofore stated, where the legacy did not lapse it passed to those entitled to receive it, free from creditors of the deceased legatee. So far as the legacy to S. Sterett McKim is concerned it is contended on his behalf, that the right of set off does not exist—First— Because he was not in fact a partner in the firm of McKim & Company with all the liabilities of a partner. Second —Because not being in fact a partner, he cannot be held liable for the indebtedness of the firm to Mrs. Sterett on the ground that he was held out as a partner, without it be shown that Mrs. Sterett to some extent gave credit to the firm on account of believing him to be a partner and that there is no evidence to show the latter, and Third —Because the debt is barred by the Statute of Limitations. With reference to these contentions, the second disappears if S. Sterett McKim was in

fact a partner in the firm with the ordinary liability of a partner for debts of the firm. It seems to me without setting forth the evidence in detail, that S. Sterett McKim must be regarded as a partner in that firm and liable for the firm's debts. It is true that as between himself and Hollins McKim, the latter contributed all of the capital of the firm and owned all of its assets and that S Sterett McKim was to receive a salary of $200.00 per month, with a right to share in the profits of the firm only when these profits amounted to over $24,000.00 per year, and that at no time after he entered the firm did the profits reach this sum. Still it is apparent that S. Sterett McKim acted and regarded himself as a partner. He filed the bill in the case of Ernest A. Betsworth vs. S. Sterett McKim against Hollins McKim in this court for a receiver "as a member of said firm," and while stating "that your orator S. Sterett McKim desires to have the partnership wound up and his liabilities if any such there be determined" he prays for a receiver to wind up the business of McKim & Company, and "that the partnership of Hollins McKim and S. Sterett McKim, trading as McKim & Company be dissolved." His position seems to always have been that the property and assets of the firm and of Hollins McKim individually should be first exhausted, but not to deny his own liability to the creditors.

With reference to the defense of limitations, it is conceded that this is good unless the bar of the statute has been removed by an acknowledgement sufficient in law 'for' this purpose. While ordinarily a deposit in a bank is not barred until demand and refusal to pay, when a bank closes and suspends the statute begins to run from the knowledge of the suspension by the depositor. McKim & Company suspended on July 1st, 1907, and Mrs. Sterett had immediate knowledge. The statute therefore began to run on July 1st, 1907 and the bar was completed after July 1st, 1910, unless there has been such an acknowledgement of the debt within three years before the institution of this suit, which was January 5th, 1912, as will remove it. The acknowledgement relied on is contained in a paper filed by the receivers in the case heretofore mentioned of Betsworth et al. vs. McKim, on June

17th, 1911, and is in the following words:

"I hereby authorize Charles Morris Howard, receiver in this case, to distribute to the creditors of McKim & Company any and all sums heretofore or hereafter paid by me to said receiver and any and all sums heretofore or hereafter received by the receiver on my account and especially the amounts collected by said receiver on my life insurance policies in the Aetna Life Insurance Company and the Northwestern Mutual Life Insurance Company. Witness my hand and seal this 16th day of June, 1911."

An order had been passed in this cause on the 26th days of June, 1908, "that Charles Morris Howard, receiver in this case be and he is hereby authorized to accept an assignment from S. Sterett McKim of all his interest and equity in policy No. 193647 in the Aetna Life Insurance Company on the life of S. Sterett McKim, subject to the conditions 'and understanding that said policy or the proceeds thereof shall be liable to the creditors of McKim & Company and of Hollins McKim individually, and said Charles Morris Howard is hereby authorized and directed to keep said policy alive, by paying out of the funds in his hands as they may come due, the premium on said policy and interest on the loan of $950.00 made by the Aetna Life Insurance Company on said policy."

The occasion for procuring from S. Sterett McKim by the receiver the paper writing which is relied upon as removing the statute, seems to have been that as Hollins McKim was then dead (he died in May, 1911) and it was apparent that the property of the firm and of Hollins McKim individually would not be sufficient to satisfy the creditors of the firm, there was no longer reason for delaying the distribution of such property of S. Sterett McKim as had come or should come into the hands of the receiver, among the creditors of that firm.

At the time this paper was signed, S. Sterett McKim was the sole surviving partner of the firm and had become liable as such, to be sued individually and alone for the firm's debts. After a full examination of the Maryland cases and notwithstanding the forcible and able argument of the

counsel for S. Sterett McKim, I have been unable to reach any other conclusion than there was here such an acknowledgement of a present subsisting indebtedness on his part to those who had been recognized as creditors of McKim & Company in the case of Betsworth et al. vs. McKim as to remove the bar of the Statute of Limitations as to their debts. Mrs. Sterett was one of these creditors and I must accordingly hold that the right of the executors to set off the claim of her estate against the legacy of S. Sterett McKim still exists.

The result so reached is somewhat remarkable. While as between Hollins McKim and S. Sterett McKim, the former was primarily liable for all of the debts of the firm, the effect of his death is to give to the representatives of Hollins McKim the legacy to him free from any claim of set off for a debt of the firm to the testatrix and to require the whole debt to be paid out of the legacy to S. Sterett McKim. But the law seems to me to have been so firmly settled by the adjudications in Maryland, both as to representatives of a legatee taking the legacy where the legatee had predeceased the testatrix free from any debt due by the legatee to her estate, and as to what acknowledgement is sufficient to remove the bar of the Statute of Limitations, that I can reach no other conclusion.

The rigid integrity of Mr. S. Sterett McKim is undoubtedly depriving him of the benefit of property, which at the time he had made the acknowledgement, he did not own, but after all it is but giving effect to his own high purpose not to avoid any liabilities resting upon him by reason of his membership in the firm of McKim & Company. The claim set up in the answer of the receiver Charles Morris Howard "to the interest in the estate of the late Mary H. Sterett. which vested in the late Hollins McKim or S. Sterett McKim in the property which passed to them under the will of the late Mary H. Sterett" cannot be sustained.

The conclusions which I have reached in this cause make it unnecessary to pass upon other questions which were ably argued or on a number of the exceptions to testimony. With reference to the latter, where the testimony excepted to seemed material to any of the holdings herein made, I have indicated my action by a marginal notation on the paper filed, which sets forth the exceptions.

I am prepared to sign a decree in accordance with this opinion.