## EDWARD V. DUERING, ET AL.,
### *vs.*
## EMANUEL BRILL, ET AL.

*Wills*: *construction; absolute estates; a subsequent clause cutting down to life estate, held to apply to cases of death before testator.*

What is said in the construction of one will is but seldom conclusive in the consideration of another.                    p. 110

A testator, after some personal bequests, left the third of the residue and remainder of his estate to his wife, and then provided:

"Second, the other two-thirds of my estate I give, devise and bequeath unto my four following named children, Edward V., Eleanor C., Mamie J. Duering, and Emma C. Brill, equally, share and share alike, absolutely, and forever, with full power to dispose of either by sale, or in any manner whatsoever, they or any of them may see fit or proper * * * "

"Third, in case of the death of either of my aforesaid children, then his, her, or their share or shares so as above devised and bequeathed, shall go to the child or children then living of the one so dying. But in case he, she, or they die without leaving any such child or children surviving, then the share of the one so dying shall go to my surviving children, share and share alike."

In construing this will, it was: *Held*, that its third provision was not intended to, and did not, have the effect of cutting down to life estates, or defeasible fees, the shares given absolutely by the second provision of the will.          pp. 111-112

This third clause was intended only to provide alternative beneficiaries for the shares of any child or children, who might predecease the testator, without leaving issue.        pp. 111-112

*Decided December 1, 1915.*

Two appeals from Circuit Court No. 2 of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Robert W. Mowbray* (with whom was *Harry T. Kellman* on the brief), for the appellants.

*Clarence A. Tucker* (with whom were *Saml. J. Harman, Chas. H. Knapp* and *Jos. N. Ulman,* on the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

A bill in equity was filed by the administrator with the will annexed of George S. Duering, deceased, two children and the widow of said Duering, together with the wife of one of said children, against the husband and the children of Emma C. Brill, deceased, who was a daughter of George S. Duering. The prayers of the bill were: 1. That the real estate of which Geo. S. Duering died seized and possessed of be sold, etc.; 2. That the opinion of the Court, and a decree in conformity therewith, may be had with reference to what interest or estate the plaintiffs, Edward V. Duering and Eleanor C. Duering, and the defendants, Alfred P. Brill, Emma Brill and Margaret Brill, have in the said real estate under the provisions of the second and third paragraphs of the will of George S. Duering, and 3. For general relief. Later Mary E. Houck and the other children of Edward V. Duering were made party plaintiffs. Answers were filed, testimony taken and a report of the auditor and master filed, in which he stated that counsel requested that the construc-

tion of the will be reserved for future adjudication. On April 13, 1914, a decree was passed for the sale of the property, which concluded by saying that, "All other questions arising out of these proceedings, especially the construction of the last will and testament of the said George S. Duering and the distribution of the proceeds of the sales hereby ordered, be and the same are hereby reserved for future order and decree of this Court."

On July 23rd, 1914, an auditor's report was filed whereby, after allowance of costs, etc., there was distributed the sum of $6,704.37—one-third to the widow, Mary Anne Duering, two-ninths to Edward V. Duering and Eleanor C. Duering, each, and two- twenty-sevenths to each of the three children of Emma C. Brill. That audit was duly ratified on August 4th, 1914, no exceptions being filed, and the amounts paid to the respective parties by the trustees.

On October 8th, 1914, Eleanor C. Duering and Edward V. Duering filed a petition alleging that Mamie J. Duering died unmarried and intestate in the lifetime of her father, the testator, and Emma C. Brill also died in the lifetime of her father and that the one-fourth of the two-thirds part of the estate of the said George S. Duering, to which Mamie J. Duering would have been entitled, had she been living at the time of the death of her father, should be equally divided between the petitioners, and that the heirs of Emma C. Brill are not entitled to any part thereof. It then stated that the trustees had in hand the sum of $1,763.00 and an irredeemable ground rent yet to be sold, and asked that in the next distribution each petitioner be allowed the sum of $186.36 before any distribution be made amongst others. An order to show cause was passed and the Brills answered, denying that the construction of the will contended for by the petitioners was correct, alleging that it was *res adjudicata* and that the petitioners having accepted the distribution made in the audit, it was too late to make objection to it, or to the theory on which it was stated.

On December 4, 1914, the plaintiffs filed a bill of review having the same object in view. That was demurred to and on February 13, 1915, the demurrer was sustained and the petition and bill of review were dismissed. From that decree an appeal was taken April 8th, 1915, by Edward V. Duering and others. On April 16th, 1915, another audit was filed and a distribution was made similar to that in the first audit. Exceptions were filed by Edward V. Duering and Eleanor C. Duering to the audit on the same grounds as those taken in the petition and bill of review. Those exceptions were overruled and that audit was ratified. On June 15th, 1915, an appeal was taken by Edward V. Duering and Eleanor C. Duering from that order of the Court.

Much of the arguments of both appellants and appellees was devoted to the questions of *res adjudicata* and laches, but under our construction of the will, it becomes unnecessary to discuss those questions. The will of the testator was executed on the 30th of August, 1894, and he died on July 16th, 1913. After making some personal bequests and giving one-third of the rest, residue and remainder of his estate to his wife, the testator made these provisions:

"Second—The other two-thirds of my estate I give, devise and bequeath unto my four following named children, Edward V., Eleanor C., Mamie J. Duering and Emma C. Brill, equally, share and share alike, absolutely and forever, with full power to dispose of either by sale or in any manner whatsoever they or any of them may see fit or proper.

"My daughters' shares or portions to be free from the debts, contracts or engagements of any husband they or either of them may now or hereafter have, and not in any manner whatsoever subject to the control or interference of any such husband or husbands.

"Third—In case of the death of either of my aforesaid children, then his, her or their share or shares so as above devised and bequeathed, shall go to the child or children then living of the one so dying.

But in case he, she, or they die without leaving any
such child or children surviving, then the share of the
one so dying shall go to my surviving children, to be
divided between them share and share alike."

Mamie J. Duering was unmarried and died intestate four-
teen or fifteen years before the testator died and Emma C.
Brill died March 29th, 1911, over two years before the
testator, leaving three children who were made defendants
in this case. There can be no doubt that the terms of para-
graph second, without some qualification or limitation in the
will, were sufficient to vest an absolute fee simple estate in
Mamie J. Duering, if she had survived her father, and as
paragraph third is the only one claimed to be such a quali-
fication or limitation, we will consider that in connection
with some cases reflecting on the subject.

In *Combs* v. *Combs,* 67 Md. 11, devise was, "all my es-
tate, real and personal, to my son, George H. Combs, to him
and the heirs of his body lawfully begotten, with full power
and authority to him, the said George H. Combs, to sell and
convey the same in his lifetime or to dispose of the same by
last will and testament; but should he, the said George H.
Combs, die without issue of his body lawfully begotten, and
without having disposed of the same by sale, or by last will
and testament, either in whole or in part, then I give and
devise," etc., to others named therein. The Court said: "It
is difficult to see how the devisee could have more absolute
control and dominion over the property. Even if there had
been no words of inheritance, and the estate had merely been
devised to George generally and indefinitely, the absolute
power of disposition would have carried the fee. *Benesch*
v. *Clark,* 49 Md. 497." It was held that the limitation over
was void, and that on death of George, without issue, and
without having made any disposition of the estate, the land
descended to his heirs at law. The language in the will
before us is certainly as strong, if not stronger than that in
the Combs will.

In *Lumpkin* v. *Lumpkin,* 108 Md. 470, Robert G. Lump-
kin, by his will, "gave to his widow his dwelling house and
its contents absolutely, and also gave her four-tenths of his
entire estate for her life, with remainder to his children to be
equally divided between them. He then gave, without any
expressions of qualification or limitation, to each one of his
five children one-tenth of his estate less whatever the recipient
might owe him at his death," and after giving one-tenth in
trust for his grandchildren, he added this clause: "In case
of either of my childrens' death without leaving lawful issue,
then I will and direct that their portion or inheritance in my
estate shall be equally divided between my wife and my sur-
viving children." JUDGE SCHMUCKER, after quoting that
clause, said: "The true meaning of that sentence is the ques-
tion of construction lying at the root of the entire litigation
of which the present appeals are the latest development. The
appellant contends that the death therein referred to of a
child without issue means such a death in the lifetime of the
testator, while the appellees insist that it means such a death
whenever it shall occur. It is conceded by all parties that
under Article 93, section 325 of the Code, the devise over is
not void for indefiniteness."

In passing on the decree of the lower Court he said: "In
our judgment the limitation over was intended to apply with
equal force to the entire share or interest of each child in the
father's estate, *and to operate as an alternative gift to the
mother and other children of the share of any child who
might die without issue in the father's lifetime.* As all the
children survived the father the limitation over was never
called into operation, and each child took at the father's death
an estate in fee in his share of the realty, and an absolute
estate in his share of the personalty, subject however, as to
the enjoyment of his share of so much of the estate as was
given to the mother for life, to her life estate therein." Again
on page 497 he said: "We think that the testator, having in
the earlier part of his will given absolutely to his children in
specified portions nine-tenths of his estate, subject to his

wife's life interest in four-tenths, intended by the clause in question only to provide alternative beneficiaries for the shares of any of his children who might predecease him without leaving issue to represent them at the distribution of the estate, and did not intend to cut down to life estates or defeasible fees the shares which he had given to his children absolutely."

The briefs in *Lumpkin* v. *Lumpkin* evidenced such diligence and ability on the part of the counsel as to call for favorable comment by the Court. So many authorities were collected in them, and referred to by the Court, that we are relieved from the necessity of now citing many decisions, and we have quoted so much from that opinion because what is said is in many respects applicable to this case, and might determine it if the intention of Mr. Duering was less clear than it is. Of course we are aware that some facts were relied on in that case which do not exist here, and that it rarely happens that what is said in the construction of one will is necessarily conclusive in the consideration of another, but what is said of the object of the testator in inserting the clause in question in that will is so strikingly similar to what we believe the intention of Mr. Duering was that we have made more use of that opinion than is customary.

Provisions for two cases were made in paragraph third—the one when a child of a testator died leaving a child or children, and the other when one of them died without leaving a child. The paragraph begins: *"In case of the death* of either of my aforesaid children, then," etc. There could be no contingency about the death of any of his children, except as to the time. As was said by CHIEF JUDGE MC-SHERRY in *Gerting* v. *Wells,* 100 Md. 93: "Death is not a contingent event at all; it is, as said by this Court in *Hammett* v. *Hammett, et al.,* 43 Md. 311, 'an absolute certainty' ". And yet after the testator had left an estate to his four children in terms as broad as could possibly be desired to give them fee simple interests, he said: *"In case of the death* of either, then his, her or their share or shares so as above devised

and bequeathed shall go to the child or children then living of the one so dying." He had by paragraph second given them all in the property that it was possible for him to leave them, and having given them all, there was nothing for him to leave to their children. If the clause could have any effect (other than stated hereinafter) it would be to reduce the estate to a mere life estate, which would be contrary to his plain language, used in the second paragraph, as well as to the thoroughly established doctrine announced in *Benesch* v. *Clark,* 49 Md. 497, and other cases in this State.

It is therefore certain that if such was the testator's intention it can not be carried into effect, as that clause can not lessen the broad gift already made, and we do not think this belongs to the class of cases where a fee is first given, and is then made defeasible, if the devisee dies without issue. But what was his intention, as gathered from paragraph third? In our judgment there can be no difficulty in determining that. Having given the interest in the estate to the four children *"absolutely and forever,* with full power to dispose of either by sale or in any manner whatsoever, they or any of them may see fit or proper," and not even limiting paragraph third to such part of the estate as a child dying had not disposed of, the only reasonable construction to give that paragraph, in order that it may have some effect, is that he intended to make provision for just such a case as did actually happen—that is to say, for one or more of his children dying in his lifetime. As was said in *Lumpkin* v. *Lumpkin, supra,* the limitation over was intended "to operate as an alternative gift to the mother and other children of the share of any child who might die without issue in the father's lifetime," or, in the language used in another part of the opinion, the testator "intended by the clause in question only to provide alternative beneficiaries for the shares of any of his children who might predecease him without leaving issue to represent them at the distribution of the estate, and did not intend to cut down to life estate or defeasible fees the shares which

he had given to his children absolutely." That not only harmonizes the provisions in the will, and makes them all effective, but carries out what seems to us to be the intention of the testator, as manifested by the will itself. Therefore, the "alternative beneficiaries" in the will were, from the death of Mamie J. Duering until the death of Mrs. Brill, Edward V. and Eleanor C. Duering and Emma C. Brill. It was just as if the name of Mamie J. Duering had been taken out of paragraph second.

The testator lived fourteen or fifteen years after the death of his daughter Mamie and made no change in his will. He is presumed to have known that by her death what he had intended as her share had gone to his three surviving children under paragraph third (if effect be given it), or that it would lapse, or be saved from lapsing by virtue of the statute, section 326 of Article 93. In either event the three children of Mrs. Brill would take what would have been their mother's share in Miss Mamie's estate, if she had survived the testator.

Of course, we do not overlook the fact that a will takes effect at the death of the testator, but that is not the question here. The question is who became entitled to the share of Mamie J. Duering, as the "surviving children" of the testator, if paragraph third be given effect, as it can be under our construction. He indicated by terms which admit of no serious doubt that they were those of his children who were surviving at the time of her death.

So without discussing other questions which were argued, for the reasons we have given we will affirm both decrees.

> *Decrees affirmed, the appellants to pay the
> costs.*