MARY B. REDWOOD, Administratrix, Etc.,

*vs.*

RIDE M. HOWISON, et al.

*Wills: construction; lapsing of legacies; statute against—;*
*(Code, sec. 326, Art. 93); devises to wife; presumption as to*
*barring dower; devises of all of property; after-*
*acquired property. Decedent's estate: Orphans'*
*Court and Equity; jurisdiction; when*
*administration in Orphans' Court*
*protects administrator.*

Under the settled rule in Maryland, a devise or bequest of all the testator's real or personal property will pass all the property which he could dispose of by will at the time of his death. p. 590

Such a devise or bequest is broad enough to include after-acquired property. p. 590

A testator, who left no children, by the terms of his will left all his property of every kind and description to his wife *absolutely;* it was *held,* that the will was made in view of the provisions of the statute,* and that his intention was that if she did not survive him, his estate should go to those who were her next of kin at the time of his death; it was further *held,* that directions in his will that his debts should first be paid did not indicate any different intention. p. 586

To a legacy to a wife, in such terms as these, the provisions of the Code (section 30, Article 93), relating to legacies in lieu of dower, do not apply. pp. 588-589

The Orphans' Court has authority to "hear and determine the question of who are next of kin, to decide between parties claiming adversely to each other, and to determine which of them are next of kin, entitled to distribution"—and what is to be distributed, and who are legatees. p. 592

_____

*Against the lapsing of legacies (Code, sec. 326, Art. 93).

578     REDWOOD *vs.* HOWISON.

By Chapter 255 of the Acts of 1896 (section 143 of Article 93 of Code), it is provided that compliance with its provisions will protect an executor or administrator making distribution under the order of the Orphans' Court.                              p. 593

*Decided January 9th, 1917.*

Appeal from Circuit Court No. 2 of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Wm. L. Marbury* and *Frank Gosnell* (with whom was *Frank B. Smith* on the brief), for the appellant.

*George Whitelock* (with *Whitelock, Deming & Kemp* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

It appears from the bill of complaint in this case that Dr. R. Dorsey Coale, of Baltimore City, died in May, 1915, leaving the following last will and testament:

"I, R. Dorsey Coale, do hereby make and declare this as my last will and testament.

1. I desire my executor and administrator to pay, from my estate, all of my just debts, and to properly adjust my accounts with the University of Maryland.

2. The above provision having been complied with, all the rest and residue of my estate, in property of every kind, and all sums of money due me, as fees uncollected or unpaid, or as salary due, from the University of Maryland, or from any other person or persons, I give and bequeath absolutely to my beloved wife, Minna Howison Coale.

3. I constitute and appoint Francis T. Redwood as my administrator and executor under this will, and I desire that no bond be required of him for the fulfillment of this duty.

In the event of the occurrence of my death before that of my mother, I commend to the love and care of my dear mother, my beloved wife, with earnest request, that should such provision be needful, she will, so far as may be possible, and from the legacy which she may have intended to bequeath to me, in the event of her death preceding mine, provide for my wife until her remarriage.

Signed, sealed, published and declared by me as my last will and testament, revoking all previous wills, this second day of April, nineteen hundred and one.

R. Dorsey Coale.   (Seal)"

The executor named in the will having died before the testator, letters of administration, with the will annexed, were granted to Mrs. Mary B. Redwood, the widow of Francis T. Redwood and sister of Dr. Coale, who, on the 22nd day of June, 1915, returned to the Orphans' Court of Baltimore City an inventory of the personal estate of the testator, valued at $55,014.54, and made up of the following items: Household furniture, $262.75; bonds, $22,257.00; stocks, $24,802.00; cash in the National Bank of Baltimore, $2,-692.79, and proceeds of policy upon the life of the decedent in The Penn Mutual Life Insurance Company, $5,000.00. The administratrix paid all the debts of Dr. Coale and settled her first account in the Orphans' Court, by which it appears that the balance for distribution, consisting of furniture, bonds, stocks and cash, is $57,383.80, subject to the collateral inheritance tax.

Dr. Coale's wife, Minna Howison Coale, died in October, 1911, leaving a will, executed in December, 1910, by which she left him all her property and appointed him executor. Letters testamentary were granted to him, and he returned an inventory of the estate amounting to $9,519.00, and consisting of bonds valued at $6,358.00, and stocks valued at $3,-161.00.   Dr. Coale, as executor, filed an account in the Orphans' Court of Baltimore City on the 22nd of October,

1913, by which it appears that the income received from the
bonds and stocks was sufficient to pay Mrs. Coale's debts and
the cost of administration, and that the bonds and stocks were
distributed to him in accordance with the terms of the will.
After his wife's death, Dr. Coale found with her will the
following letter, and also a list of articles which she described
as "heirlooms in Coale family," and which she stated were
"to go to Mary B. Redwood":

"January third 1911

My dear Dorsey, here is my letter of bequests & if
you do not object to any of them, I would like very
much to have you carry them out at your convenience.
I want Mother to have my fur coat.  Aside from that
I will leave her only her bed room furniture if she
wishes it, as I know you will look out for her & after
your death, Nell will continue to take care of her.  I
would like Nell to have all my jewelry, silver and
clothes & a pair of 'Palm leaf cut' decanters.  They
are my own and are on the lowest shelf of the glass
closet.  I want her to give Lida Nancy and Gretchen
a piece of my jewelry.  At your death, I would like
you to leave Nell my share of Aunt's money, & all
our furniture & silver & glass which were not heir-
looms in your family.  I especially want Nell to have
my Chinese and Japanese things & embroideries.  I
would like Gretchen to get $1000.  Ellen to get $100.
Henriette $50.  The rest to go to Nell at your death;
Please don't let Rhett want in her old age.  I want
Mary Redwood to have my cameo bracelet that Aunts
gave me the cameos for.  I want George to have any
of my books & $100.  I want Francis to have my little
ivory rabbit & $100.  Please give Mr. Crosby the little
cigarette holder on the mantel.  And some book of
mine.  Give Aunt Bess a piece of glass or china.  I
think that is all & hope I have not left out anyone.
Thank you Dorsey & God keep you my dear.  You were
always so good and patient with me.

Your loving wife Minna Coale."

The bill states that Dr. Coale gave Margaret Rohe, referred to in the letter as "Gretchen," a $1,000.00 bond, and that all his wife's requests were complied with, "with possibly one or two exceptions," during his life, except the request in regard to the heirlooms, which were not received by Mrs. Redwoood until after Dr. Coale's death because they largely furnished the house in which he resided, and the request in regard to Eleanor Howison Witherspoon, spoken of in the letter as "Nell." Mrs. Coale's mother, who was living with Mrs. Coale at the time of her death, continued to live with Dr. Coale as his guest until his death. Dr. Coale kept the bonds and stocks received by him under his wife's will in his box in the Safe Deposit and Trust Company of Baltimore in a package by themselves and separate from other securities owned by him, and each certificate of stock and each bond was marked in his handwriting in pencil either "From Minna H. Coale" or "M. H. C."

Mrs. Caroline Donaldson Coale, mother of Dr. Coale, died in January, 1902, leaving a will executed in October, 1900, and Dr. Coale received from her estate $17,563.11. The policy of life insurance for $5,000.00 was issued in 1896, and was made payable, in accordance with Dr. Coale's application, to his wife, "if she survive him otherwise to his executors, administrators or assigns." In December, 1912, the Aetna Life Insurance Company, of Hartford, issued an "Accumulative Disability Policy" to Dr. Coale, which was in force at the time of his death, by the terms of which, in case of his death by accident, the amount therein specified was payable to his estate. At the time of her death, Dr. Coale's wife was thirty-eight years of age, and he was fifty-seven years of age when he died, and the bill alleges that at the time Dr. Coale made his will "he was without property or estate of any pecuniary value and that he was in receipt of no income except his salary as professor of chemistry at the University of Maryland and as Dean for a number of years of the Medical School of the University, which salary * * *

was no more than sufficient to defray" his living expenses, and that at the time of his death his estate consisted almost exclusively of the property he acquired after the execution of his will from his wife's estate, from his mother's estate, and from the estates of his two aunts, Elizabeth B. Coale and Josephine R. Coale, and the estate of his cousin, Robert M. Proud, "and the investments of income arising therefrom, together with $5,000.00 proceeds of the above mentioned policy of insurance."

Dr. Coale left as his only heirs at law and next of kin his sister, Mrs. Mary B. Redwood, and a nephew, George B. Coale, the son of a deceased brother, and the bill of complaint, which was filed by Mrs. Redwood, in her own right and as administratrix *c. t. a.* of Dr. Coale, against Mrs. Ride M. Howison and Mrs. Eleanor Howison Witherspoon, the mother and sister of Dr. Coale's wife, and her next of kin at the time of his death, and the said George B. Coale, alleges that the plaintiff for a time after the death of Dr. Coale was advised that notwithstanding Mrs. Coale died before Dr. Coale his will was operative to pass all his property and estate to the defendants, Mrs. Howison and Mrs. Witherspoon, as the next of kin of his wife at the time of his death, but that "she has recently been advised that upon a proper construction of the will" it was "only to take effect in the event that his wife * * * survived him, and that she having predeceased him," Dr. Coale died intestate, and that his estate is distributable to the plaintiff and Dr. Coale's nephew, "who are his sole heirs at law and next of kin and distributees"; "that claim has been made upon her for the estate * * * upon the one hand by the defendants," Mrs. Howison and Mrs. Witherspoon, "and upon the other on behalf of the infant defendant, George Buchanan Coale"; and that she is further advised that it would not be safe for her to pay over the estate of Dr. Coale "or any part thereof to either of the defendants without the protection of a decree" of the Court below. The bill prayed the Court to construe

the will and to assume jurisdiction over the further administration of the estate, etc.

The defendants, Mrs. Howison and Mrs. Witherspoon, demurred to the bill upon the following grounds: "1st. The plaintiff has not stated in her said bill of complaint such a case as entitles her to any relief in equity against these defendants. 2nd. It is apparent upon the face of the bill that the language of the will of R. Dorsey Coale, deceased, and the intent of the testator thereunder are plain, unambiguous and free from doubt, and that therefore the Court is without jurisdiction to construe said will. 3rd. The bill of complaint discloses no special circumstances, nor alleges any facts legally sufficient to confer upon this Court jurisdiction over the further administration of the estate of the said R. Dorsey Coale, deceased, by the plaintiff as his administratrix, *c. t. a.* 4th. It is apparent upon the face of the bill itself that these defendants are the persons legally entitled to receive the estate of the said R. Dorsey Coale, deceased, from the plaintiff as his administratrix to the exclusion of all other persons." The Court below held that the will was too clear and positive to admit of a construction "that would qualify the bequest," and this appeal is from its decree sustaining the demurrer and dismissing the bill.

The appellant contends that the decree should be reversed for the following reasons: "1st. Because upon the face of the will and from such surrounding circumstances as may be properly resorted to, it clearly appears that Dr. Coale did not mean that the bequest to his wife should be operative unless she survived him. 2nd. Because the provision made by Dr. Coale for his wife is by statute conclusively presumed to have been in lieu of her distributive share of his estate and was conditioned under the statute upon her becoming his widow; and that she having predeceased him the will failed to take effect upon any part of his estate. 3rd. Because the prior death of Dr. Coale's wife brought about a complete change in his family, and with it an implied revoca-

tion of his will. * * * 4th. Because under no circumstances could the property which Dr. Coale acquired under his wife's will pass under his will back through the wife to her relatives. 5th. Because clearly it was not Dr. Coale's intention that the $5,000, proceeds of the policy upon his life * * * should pass under his will to the mother and sister of his wife, his intention having been clearly expressed in the policy and in his application therefor that his wife was not to become entitled to the same unless she survived him."

Section 326 of Article 93 of the Code of 1912, provides: "No devise, legacy or bequest shall lapse or fail to take effect by reason of the death of any devisee or legatee (actually and specifically named as devisee or legatee, or who is or shall be mentioned, described or in any manner referred to, or designated or identified as devisee or legatee in any will, testament or codicil) in the lifetime of the testator, except as hereinafter provided, but every such devise, legacy or bequest shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator," etc. In *Vogel* v. *Turnt,* 110 Md. 192, the Court quotes the statement in 18 *Am. & Eng. Ency. of Law,* 758, that: "Statutes for the prevention of lapses are intended, not to defeat the will, but to supplement it, and ought not to control if it be inconsistent with the will to have them control," and after referring to Maryland cases in accord with that view, says further: "But it was also said in 18 *Am. & Eng. Ency. of Law,* 758, immediately following the above quotation: 'But it must be presumed that the testator made the will in view of the statute and that he intended to have the statute prevail, unless the contrary appeared. The burden of showing the contrary is on the party claiming that the statute does not apply, and this burden is not lifted when it is made to appear that the legacies were prompted by a personal regard for the legatees, for the fact that they were so prompted is not at all inconsistent with an

intent to have them go to the descendants of the legatees in case the legatees themselves die before the testator.'" In that case the Court held that the language of the will relied on was by no means sufficient to overcome the effect of the statute, and after discussing the provisions of the will, said in conclusion: "The terms of the will strengthen, rather than weaken, the position taken by the appellee. If the testator had desired to exclude his daughter's husband from the enjoyment of what he devised and bequeathed to her, he could have left her share for life, or could have put it in trust, and very easily have accomplished such purpose. But he not only did not adopt that course, but he forgave his daughter and her husband the debt they owed him, and the evidence, taken by the appellants, shows that he knew that his daughter was dead and that he was gratified when he heard that her body had been taken to Baltimore and buried in his lot. So if we make use of the evidence offered by them, it rather tends to show the very opposite of their contention, in so far as it has any effect on the question. Indeed the will itself indicates a clear intention to give the testator's daughter the ground rents referred to, and to make her one of the residuary legatees and devisees, and there is an entire absence of a desire to exclude her husband, or any other person who might by law or otherwise become interested in the property left her." In the case of *Hemsley* v. *Hollingsworth,* 119 Md. 431, the Court calls attention to the fact that it had been the policy in this State for one hundred years to prevent the lapsing of legacies and devisees merely because the legatee or devisee had predeceased the testator, and to the presumption that the testator was advised of the result of a legatee dying before him, and after referring to the statement in 18 *Am. & Eng. Ency. of Law* which we have quoted above, said: "When this will was executed in 1897, it must be presumed, in the absence of something to the contrary, that the testatrix intended that the devise or bequest left to Mr. McKim should go to him, if living at the time of her death, and if not then

living to those *in esse* entitled to his estate. The provision had so remained in her will for twelve years before she was stricken, and McKim & Company had failed more than two years before it is claimed she became incompetent to change her will, but she made no change in it." Again in *Duering v. Brill,* 127 Md. 104, the Court refers to the fact that the testator lived fourteen years after the death of his daughter and made no change in his will, as reflecting upon the intention of the testator. By the terms of his will, Dr. Coale, after providing for the payment of his debts and the adjustment of his accounts with the University of Maryland, gave all the rest and residue of his estate, "in property of every kind, and all sums of money due him, as fees uncollected or unpaid, or as salary due him by the University of Maryland, or from any other person or persons," *absolutely* to his wife. Now it is presumed that he made this will in view of the provisions of the statute, and that he intended, in the event his wife was not living at the time of his death, that his estate should go to those who were her heirs or next of kin at his death, unless a contrary intention appears. The appellant insists that the directions in the will for the payment of his debts and the adjustment of his accounts with the University of Maryland, followed by the provision: "The above provision having been complied with, all the rest and residue," etc., indicate that the testator had in mind that these duties were to be performed prior to any payment to his wife; that he meant that the provision for his wife should not be operative until all his accounts were adjusted, and that he contemplated that his wife, "should be living at the time and after those adjustments had been made." According to this view, if Mrs. Coale had survived her husband and died before his executor had adjusted his accounts with the University of Maryland, her estate would not have received the provision made for her by the will. That manifestly was not the intention of the testator. The duties imposed upon the executor were to be performed for her benefit and the

benefit of his estate, in order to ascertain the *amount* to which she would be entitled. The appellant also relies on the clause of the will in which Dr. Coale requests his mother to provide for his wife until her "re-marriage." The conclusion to be drawn from that request is that Dr. Coale had in view the probability of his dying before his wife, and that his mother might survive him, in which event he was anxious to make some further provision for his wife, in case she needed it, until her "re-marriage." The fact that this request was prompted by a regard for his wife, his desire, in the event she survived him, to secure for her some further protection than his estate would afford, is not at all inconsistent with an intent that her mother and sister should take his estate, if he survived her. If he had desired to exclude them from the enjoyment of his estate he could very easily have accomplished his purpose by giving his wife only a life estate, or by some other provision indicating his intention to do so. Mrs. Coale's mother was living with her at the time of Mrs. Coale's death, and continued to live with the testator until his death, and notwithstanding the testator lived several years after his wife's death, he never made any change in his will. We can not assume that he overlooked the fact that he had made a will, or that after having made one disposing of all his property, he intended to die intestate. Whatever may have been his purpose in marking the stocks and bonds he received from his wife, it could not have been done with the view of having them go to *his* next of kin. Having complied with the other requests of his wife, if any conclusion is to be drawn from the fact that he marked the securities he received from her, it would be that he intended thereby to indicate to Mrs. Witherspoon, who was to share his estate under his will, the securities his wife desired her to have.

Section 301 of Article 93 of the Code declares that "Every devise of land or any estate therein, or bequest of personal estate to the wife of the testator shall be construed to be intended in bar of her dower in lands or share of the personal

estate, respectively, unless it be otherwise expressed in the will," and it is urged on behalf of the appellant that Mrs. Coale never became. entitled to dower "or thirds" in Dr. Coale's estate, and as the testator did not expressly state that the provision he was making for his wife was not intended to be in bar of her dower and thirds, the legal presumption is that he did so intend it, and the provision for her was just as much "upon condition that she survive him as if he had expressly said so." According to the theory of the appellant, every devise or bequest to a wife, where the testator does not state that it is not in lieu of her dower or share of his personal estate, is "upon condition" that she survive the testator, and hence the provision of the Code providing against the lapsing of legacies and devises does not apply. This view is not justified by the language of either of the sections referred to, and is obviously foreign to the apparent meaning of section 301, which had for its purpose the establishment of a rule of construction by which a widow is precluded from taking a devise or legacy and also her dower. or share of the personal estate of her husband, unless the will expressly authorizes her to do so. No authorities are cited in support of the contention, and we think it is fully disposed of by the case of *Hays* v. *Wright,* 43 Md. 122. There the testator, John Hays, executed his will on the 19th of January, 1867, by which, after some special bequests, he gave and bequeathed "all the rest and residue of his personal estate of every description, moneys, bonds, notes, judgments, evidences of debt, furniture and all other personal property of every kind and description," to his wife, Ann Maria Hays. After the execution of the will, John Hays made a schedule of seven United States bonds and executed an assignment thereon in the following words: "For value received I assign the within United States bonds to Ann Maria Hays," etc. Mrs. Hays died a short time before her husband, and the controversy was between the representatives of John Hays and the representatives of his wife, Ann Maria Hays, each claim-

ing the bonds. In disposing of the case the Court said: "The decision in *Glenn* v. *Belt,* 7 G. & J. 362, conclusively settles the question now before us. The Code, Art. 93, sec. 326, provides that no devise, legacy or bequest shall lapse or fail of taking effect by reason of the death of the devisee or legatee in the lifetime of the testator, but that any such devise, legacy or bequest shall have the same effect and operation in law as if such devisee or legatee had survived the testator. The Court of Appeals in *Glenn* v. *Belt,* before referred to, have construed this section of the law, and they decided that the time of the transfer is the death of the testator, and that the persons to whom the transfer is made are those *in esse,* entitled by law to the distribution of the legatee's estate in case of intestacy; that is, his representatives. If the assignment of the bonds made by the husband to the wife in March, 1867, was not valid, it is clear that they passed under the residuary clause of the will to his wife, and she having died in the lifetime of the testator, that at his death they would pass to her representatives, the appellees in this case."

The will was not revoked by the death of Mrs. Coale. In *Baldwin* v. *Spriggs,* 65 Md. 373, the Court held that the testator having disposed of the whole of the estate owned by him at the date of his will, and having again married and had children by his second wife, and having made no provision for such children, his will was revoked by operation of law. That ruling was based upon the English common law rule, which rests upon a tacit condition annexed to the will, that the will shall not take effect in case of marriage and birth of a child not provided for. 1 *Jarman on Wills* (6th Ed.), star p. 110, note 1. But it is said in 1 *Jarman on Wills,* p. 111: "The marriage of a man, however, had no such effect upon his previous testamentary disposition, in regard to either real or personal estate, on the ground, probably, that the law had made for the wife a provision independently of the act of the husband, by means of dower."

The same doctrine is stated in 40 *Cyc.* 1198-1200. If the marriage of a man does not work a revocation of his will, certainly the death of his wife cannot have that effect.

There is nothing in Dr. Coale's will to indicate that he did not intend to dispose of property acquired after its execution, and the settled rule in this State is that a devise or bequest of all the testator's real or personal property will pass all the real or personal property which he could dispose of by will at the time of his death. *Dalrymple* v. *Gamble,* 68 Md. 523; *Lindsay* v. *Wilson,* 103 Md. 276; sec. 336, Art. 93, Code of 1912. The case of *Bourke* v. *Boone,* 94 Md. 472, relied on by the appellant, is not at variance with this rule. There the testatrix devised "all the land belonging to me; being part of what I obtained from my father, the adjoining lands of Thomas Robinson's heirs," etc., to her brother for life, and after his death, to her niece, Alice V. Boone. Her brother died in 1880 and the testatrix died in 1900, and the question was whether, under the above provision of her will, her niece, Alice V. Boone, took land the testatrix acquired under the will of her brother. The Court held that the devise to the niece was not a general devise, but, in effect, a devise to her brother for life, and to her niece in fee, "of all the land belonging to me, which I obtained from my father." In the course of the opinion, JUDGE PAGE said: "John Linstid by his will gave her all the property of which he was seized and possessed, and she gave to him all she then had for life. Is it possible to believe that she then had in her mind the intention of disposing to John his own property, which she could only receive from him at his death? To entertain that belief we would be forced to hold that she intended to give him a life estate in property which she could not devise until after his death. What she must have intended, therefore, was merely to make disposition of what she then had." In the case at bar, the testator gave his wife *all* the rest and residue of his property, and, as we have said, there is nothing in the will to limit the devise or bequest

to any particular part of his estate, or to exclude from its operation property acquired after its execution.

In regard to the $5,000.00 policy of life insurance, it is clear, we think, that the testator intended his wife or her next of kin to have the proceeds. After making the policy payable to her, if she survived him, he made his will giving her all his property and estate. He knew that if his wife survived him she would receive the proceeds of the policy from the insurance company, and it is presumed that he knew that if his wife did not survive him, the proceeds of the policy would pass under his will to her next of kin at the time of his death. The reasoning of the Court in *Hayes* v. *Wright, supra,* seems strikingly appropriate to the facts of this case. It was there said: "But it has been contended that the testator, in executing the assignment (of the bonds) to his wife, manifested his intention to exclude these bonds from the operation of his will. In this view we cannot concur. It is evident from the circumstances surrounding the transaction and the parties, that it was John Hay's intention that his wife and her representatives should have these bonds. His will was made in January, 1867, by which *all* his bonds were bequeathed to her, and afterwards, in March of the same year, when he executed the assignment of the seven bonds he made no change in his will, still manifesting the intention that his wife should have all the property not specifically devised to others, and even after her death he still made no alteration in his will, thereby still showing his intention that her representatives should take what he had bequeathed to her."

Finding nothing in the will or the surrounding circumstances disclosed by the bill to indicate that the testator did not intend sec. 326 of Art. 93 of the Code to apply to the devise and bequest to his wife, we must hold that under that section and the averments of the bill the mother and sister of Mrs. Coale are entitled to the testator's estate.

It is also urged on behalf of the appellant that the Court below erred in refusing to assume jurisdiction over the further administration of the estate and in dismissing the bill. In the case of *Woods* v. *Fuller,* 61 Md. 457, the Court said: "The Orphans' Courts of the State are tribunals in which, ordinarily, the estates of deceased persons must be settled; and in order to give courts of equity jurisdiction to superintend the settlement of an estate, or to distribute the legacies at the instance and request of the executor, he must show some special circumstances, such as a trust devolved upon him by the will, and about which he is doubtful, or at least something more than the mere payment over of a legacy after the debts are paid." The Orphans' Court has authority "to bear and determine the question who are next of kin, and to decide between parties claiming adversely to each other, and to determine which of them are next of kin entitled to distribution" (*Blackburn* v. *Craufurd,* 22 Md. 447), and to determine what is to be distributed and who are legatees. *Pole* v. *Simmons,* 45 Md. 246. In the case of *Glenn* v. *Belt,* 7 G. & J. 362, the appeal was from an order of the Orphans' Court construing the statute against lapsing of legacies and devises. In the case of *Roane* v. *Hollingshead,* 76 Md. 369, the Court affirmed the order of the Orphans' Court holding that "a woman's marriage" did not revoke a will previously made by her, and in the case of *Hagerstown Trust Company* v. *Ex. of Mealey,* 119 Md. p. 232, the Court, referring to section 235 of Article 93 of the Code of 1912, said: "It follows from this grant of power that the Orphans' Court is for most purposes the proper forum in which to settle the estate of a deceased person, and to say generally that it possesses no power to construe a will, would be to deny to it the power to approve an account of an executor by which payments of legacies were made, and force the estate of every person who was so unfortunate as to leave a will to the double expense of administration in the Orphans' Court, and then being taken into an Equity Court for a construction of a will and a

payment of the legacies contained therein; therefore, it has been frequently said that 'in order to give the equity Court jurisdiction some special circumstances must appear, such as a trust devolved on a trustee and about which he is doubtful, something more than the mere payment over of a legacy after the debts are paid.' "

In *Alexander* v. *Leakin*, 72 Md. 199, the Court held that where some of the parties interested, or claiming an interest in the estate to be distributed are non-residents, and especially where they are known to the administrator, it is the right of the administrator or the parties interested to seek the aid of a Court of Equity where all the parties will be afforded ample protection from future responsibility and litigation. The decision in *Zollickoffer* v. *Seth*, 44 Md. 371, that a creditor, who was not in default, could recover from the distributee of an estate, was there held to apply to one claiming as next of kin. The reason the Court gave for so holding was that the Orphans' Court had "no power to issue process against parties to bring them in or make publication against them" and thereby "compel such parties to submit themselves to its jurisdiction." After the decision in that case, section 143 of the Code, therein referred to, was amended by the Act of 1896, Chapter 255 (sec. 143, Art. 93, Code of 1912), authorizing the Orphans' Court to issue summons for residents of the State and to pass an order of publication against non-residents, interested in the distribution of an estate as legatees or next of kin, requiring them to appear in said Court on or before the day named therein. In the case of *Garrett* v. *Kerney*, 107 Md. 501, the Court held that as the estate of the intestate had been distributed after a compliance with section 143, as amended, his wife and daughter, who were living in Ireland, and who did not know of the death of the intestate and did not participate in such distribution, could not recover from the administrator, or the administrator *de bonis non*. The Court said whether or not they could recover from the distributee was not before the Court. The section referred to expressly provides that a

compliance with its provisions will protect an executor or administrator, and we can see no reason why it does not afford equal protection to those who receive the estate as legatees or distributees. The Orphans' Court has jurisdiction of the fund or property constituting the estate to be distributed, and is given the same power to compel those interested to submit themselves to the jurisdiction of the Court that a Court of Equity possesses. It is true that in *Coudon* v. *Updegraf,* 117 Md. 71, the Court refers to the fact that some of the parties were non-residents, as one of the reasons why a Court of Equity had jurisdiction, but the jurisdiction of the Court below in that case was sustained on the ground that the will there involved created a trust and that the Orphans' Court had no jurisdiction "of the administration of a trust created by a will." The will in this case is clear and definite in its provisions, and all that remains for the administratrix to do is to pay over the estate to the parties entitled to receive it. The Orphans' Court has authority to determine who are the distributees or next of kin entitled to the estate, and there is no reason why a Court of Equity should assume jurisdiction over the distribution.

> *Decree affirmed, costs to be paid out of the*
> *estate of said R. Dorsey Coale by Mary*
> *B. Redwood, Administratrix, Etc.*