720 A.2d 1225

**Ronald D. ROWE, Personal Representative of the Estate of Margaret J. Rowe**

**v.**

**Kathleen C. ROWE, Personal Representative of the Estate of L. Maurice Rowe, III.**

**No. 313, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Dec. 2, 1998.

90

David Scull, Bethesda, for appellant.

Gerald W. Heller (Linowes and Blocher, LLP on the brief), Silver Springs, for appellee.

Argued before SALMON and KENNEY, JJ., and GARY I. STRAUSBERG, Judge, Specially Assigned.

KENNEY, Judge.

Appellee, Kathleen C. Rowe ("Kathleen"), filed a Petition to Construe Will ("the Petition") on October 27, 1997, in the Circuit Court for Montgomery County, sitting as the Orphan's Court. In the Petition, she sought a one-half share of the residuary estate of Margaret J. Rowe ("Margaret"), the deceased mother of appellee's late husband, L. Maurice Rowe, III ("Maurice"). Appellant, Ronald J. Rowe ("Ronald"), Margaret Rowe's other son, defended, arguing that he was entitled to his mother's entire residuary estate. After a hearing on January 13, 1998, the circuit court granted appellee's Petition and ordered appellant, as Personal Representative of his mother's estate, to distribute one-half of Margaret's residuary estate to the estate of L. Maurice Rowe, III. Appellant noted a timely appeal.

Appellant raises one question for our consideration:

Did the trial court err in directing that one-half the residuary estate [of the testatrix Margaret Rowe] be distributed to the personal representative of predeceased beneficiary L. Maurice Rowe III?

Because the terms of the testatrix's will do not express a contrary intent, we shall apply Maryland's anti-lapse statute, Md.Code (1974, 1991 Repl.Vol., 1998 Cum.Supp.), § 4–403 of the Estates and Trusts Article ("E.T."), to hold that appellee, as the heir of her late husband, inherits one-half of Margaret Rowe's residuary estate.

## Facts

When Margaret executed her will in 1979, her husband and her two sons were alive, however, her husband and her son, Maurice, predeceased her. Maurice was survived by his spouse, Kathleen, and their three children. Kathleen is the

Personal Representative and sole residuary legatee of Maurice's estate.

Margaret died on December 29, 1996. Her will was admitted into probate on July 11, 1997, and Ronald, her surviving son, was appointed the Personal Representative of her estate.

Margaret's will stated, in pertinent part:

I give, devise and bequeath all the rest, residue and remainder of my estate and property, real and personal and mixed unto my said husband, absolutely. In the event he does not survive me, then I give, devise and bequeath the rest, residue and remainder of my estate and property unto my own two sons, L. Maurice Rowe, III and Ronald David Rowe equally, share and share alike.

Understanding that Ronald believed that he was entitled to all of Margaret's residuary estate, Kathleen filed a Petition to Construe Will in the Circuit Court for Montgomery County. She contended that, as sole residuary heir to her late husband's estate, she was entitled to his one-half share of Margaret's residuary estate. After oral argument on January 13, 1998, the court granted appellee's Petition and ordered appellant, as Personal Representative, to distribute one-half of Margaret's residuary estate to the estate of L. Maurice Rowe, III.

## Discussion

"In the construction of wills, the sole object of the inquiry is to ascertain the intention of the testator." *Patchell v. Groom*, 185 Md. 10, 14–15, 43 A.2d 32 (1945). In *Payne v. Payne*, 136 Md. 551, 554–55, 111 A. 81 (1920), the Court of Appeals observed that

there is no other class of cases where [previous appellate] decisions are of so little aid in reaching a correct conclusion .... because, of all the cardinal rules governing the interpretation of wills, by far the most important ... is the rule that the intention of the testator, where that can be ascertained from the language of the will and from the circum-

stances surrounding the testator at the time of its execution, must control. . . .

The circuit court tried this case without a jury. We will review the case on both the law and the evidence, and will not set aside the judgment on the evidence unless the trial court was clearly erroneous. Md. Rule 8–131(c); *see Oliver v. Hays,* 121 Md.App. 292, 305–306, 708 A.2d 1140 (1998); *Nicholson Air Services., Inc. v. Board of County Comm'rs of Allegany County,* 120 Md.App. 47, 66–67, 706 A.2d 124 (1998); *In re Joshua David C.,* 116 Md.App. 580, 592, 698 A.2d 1155 (1997).

When substantial evidence exists to support the trial court's findings, the findings are not clearly erroneous. *Ryan v. Thurston,* 276 Md. 390, 392, 347 A.2d 834 (1975). When "competent material evidence" supports the trial court's findings, we must uphold them and cannot set them aside as clearly erroneous. *State v. Johnson,* 108 Md.App. 54, 70–71, 670 A.2d 1012 (1996). An appellate court should not substitute its judgment for that of the fact finder, even if it might have reached a different result. *Oliver,* 121 Md.App. at 306, 708 A.2d 1140.

The trial court's conclusions of law are not entitled to the deference of the clearly erroneous standard, however. When examining the trial court's application of the law to the facts, we use an abuse of discretion standard. *Oliver,* 121 Md.App. at 306, 708 A.2d 1140; *Pierce v. Montgomery County,* 116 Md.App. 522, 529, 698 A.2d 1127 (1997); *In re Michael G.,* 107 Md.App. 257, 265, 667 A.2d 956 (1995).

## I. Presumption against disinheritance

In Maryland, there exists a common law presumption against disinheritance of heirs at law, next of kin, and statutory distributees. *Payne,* 136 Md. at 553–555, 111 A. 81. Where no contrary indications exist,

[i]t is a rule of construction that an equitable distribution of one's property among the natural objects of his bounty must be given consideration and weight, and that his legal

heirs should be regarded as possessing the same consideration unless otherwise clearly provided .... those who have equal claims in law or in affection upon the testator should be placed in equal positions where it can be done without doing violence to the written word.

*Adams v. Safe Deposit & Trust Co. of Baltimore*, 178 Md. 360, 366, 13 A.2d 546 (1940). Where an ambiguity exists as to the testator's intent, it will be interpreted against disinheritance unless there is a manifest intention to the contrary. *Saylor v. Plaine*, 31 Md. 158, 164, 1 Am. Rep. 34 (1869).

█ Were we to accept appellant's contentions, the family of one of the testatrix's sons would be disinherited, to the sole benefit of the other son. Had the testatrix clearly expressed this intent, there would be no doubt as to our decision. Because this intent has not been clearly identified, however, and because a quite opposite intent may actually be apparent, we are disinclined to interpret the will in such a way as to prevent Maurice's family from inheriting his share of his mother's estate.

## II. The anti-lapse statute

Maryland's anti-lapse statute, E.T. § 4–403, provides, in pertinent part:

(a) *Death of legatee prior to testator.*-Unless a contrary intent is expressly indicated in the will, a legacy may not lapse or fail because of the death of the legatee after the execution of the will but prior to the death of the testator if the legatee is:

(1) Actually and specifically named as legatee;

(2) Described or in any manner referred to, designated, or identified as legatee in the will; or

(3) A member of a class in whose favor a legacy is made.

(b) *Effect of death of legatee.*–A legacy described in subsection (a) shall have the same effect and operation in law to direct the distribution of the property directly from the estate of the person who owned the property to those

persons who would have taken the property if the legatee had died, testate or intestate, owning the property.

Maryland's anti-lapse statute is broader than that of many other states. *Mayor & City Council of Baltimore City v. White,* 189 Md. 571, 574–575, 56 A.2d 824 (1948). The Court of Appeals has observed that "[t]he [anti-lapse] statute has been liberally construed.... The statute expresses a presumed intent of the testator. The presumption may be overcome by expression of a contrary intent in the will, but is supported by the presumption that the will is made in view of the statute." *Id.* at 574–75, 56 A.2d 824 (citations omitted); *Duering v. Brill,* 127 Md. 104, 111–12, 96 A. 269, 272 (1915); See E.T. § 4–403(a).

Therefore, unless we can find a contrary intent "expressed" in the testatrix's will, the anti-lapse statute will dictate that the legacy to Maurice will not lapse but will pass to appellee. Appellant, as the party asserting a contrary intent, has the burden of demonstrating that intent and overcoming the presumption that the will was made "in view of the statute." *Mayor and City Council of Baltimore,* 189 Md. at 575, 56 A.2d 824; *Vance v. Johnson,* 171 Md. 435, 441, 188 A. 805 (1937).

### III. "Equally, share and share alike"

Appellant argues that E.T. § 4–403 should not be applied to the present case because it is "overridden" by the testatrix's expressed intent to have a *per capita* distribution. Appellant contends that the phrase "equally, share and share alike" in the residuary clause of the will requires that distribution be *per capita.* A *per capita* distribution is dependant upon survivorship of the person named as the legatee, whereas a *per stirpes* distribution can pass to the heirs of a legatee if the legatee predeceases the testatrix. Appellant contends that both "equally" and "share and share alike" connote *per capita.*

The phrase "equally, share and share alike" generally indicates an intention for a *per capita* distribution, but it does not always necessitate such a result. When the meaning that the testatrix intends for a phrase is indefinite, a court

should look to the rest of the will. In *Patchell*, 185 Md. at 14–15, 43 A.2d 32, the Court of Appeals stated:

> In the construction of wills, the sole object of the inquiry is to ascertain the intention of the testator. When ordinary words are used, these are to be taken in their ordinary meaning unless a contrary intention clearly appears. Likewise, when recognized legal terms are used, the testator is presumed to have used such terms with the knowledge of their technical meaning, and with the purpose of employing that meaning in the disposition of his property. But even technical meanings may vary with surrounding circumstances, and legal terms may mean one thing in one will and have a different meaning in another. The final inquiry in each such case is what did *this* testator mean by the use of this term *in this will.* [Emphasis in original.]

In *Cole v. Bailey*, 218 Md. 177, 146 A.2d 14 (1958), a will specified that a trust should be divided between the testator's nephews, nieces, and sister "share and share alike per representation." *Id.* at 179–180, 146 A.2d 14. Because the phrase "share and share alike" is often used to reflect *per capita* distributions, and "per representation" generally indicates a *per stirpes* distribution, the Court of Appeals held that the utilization of both terms in the phrase created an ambiguity. The Court, therefore, looked to the rest of the will for an indication of the testator's intent. Based on its review, the Court found that the testator intended a *per stirpes* distribution.

In *Stahl v. Emery*, 147 Md. 123, 127 A. 760 (1925), a testator left his wife a life estate and directed that, upon her death, the remainder was "to be equally divided among our children, share and share alike." *Id.*, 147 Md. at 125, 127 A. 760. The testator had two daughters and two sons at the time he created the will, but both daughters predeceased the testator, leaving children. The Court of Appeals held that the testator's intention was to leave the estate to his children as a class and not as individuals. The Court held that, because the gift was to a class, the version of the anti-lapse statute then in effect did not apply. The two sons, therefore, received the

entire estate, and the children of the two daughters received nothing.

The *Stahl* Court's interpretation of the will to direct a *per capita* distribution was not based solely on the "equally divided ... share and share alike" language; rather, the Court held that the testator had given the estate to his children as a class ("among our children"), the members of which were not ascertainable until the life tenant's death.[1] Because the children were not specifically identified but took as a class, the then applicable anti-lapse statute did not apply to the will. There were no ascertainable legatees whose legacies could lapse; there was merely a class whose members were determined at a later date. As the Court stated, this result was the same as if the testator had left the estate to his children as joint tenants. *Stahl*, 147 Md. at 129, 127 A. 760 ("where the gift is to a class, the objects composing the class take as joint tenants and not as tenants in common, and hence it is subject to the incident of survivorship.").

Leaving a legacy to several legatees as joint tenants, however, is "a tenancy not favored in Maryland." Philip L. Sykes, Maryland Practice, Vol. 1, Probate Law and Practice, § 134 n.26 (1956, Cum.Supp.1965). The version of the anti-lapse statute enacted four years after *Stahl*, Acts of 1929, ch. 543; Art. 93, § 352, "was designed to change the old Maryland rule

---

1. The Court of Appeals, in *Robinson v. Mercantile Trust Co.*, 180 Md. 336, 343–44, 24 A.2d 299 (1942), noted that Judge Offutt's opinion in *Stahl* identified the death of the life tenant, rather than the death of the testator, as the time at which the interests of the surviving class members vested. In *Robinson*, the Court held that remainders under the will vested upon the death of the testatrix, not upon the death of the life tenant. The *Robinson* Court recognized that, because in *Stahl* the class was the same both at the death of the testator and at the death of the life tenant, the result would have been the same under either method, but stated that "[t]here is nothing in the body of the [*Stahl*] opinion which leads to the conclusion that the court intended that the rule, previously universally held, would be changed." The *Robinson* Court also noted that in two post-*Stahl* cases Judge Offutt "discussed with approval" the early vesting rule and "gave it its full application." *See Grace v. Continental Trust Co.*, 169 Md. 653, 182 A. 573 (1936); *Nicodemus National Bank v. Snyder*, 178 Md. 140, 12 A.2d 518 (1940).

that in a gift to the children of a testator as a class of persons, if one of the children dies before the testator, the children of the testator's child so dying do not take the parent's share." *Id.* This suggests that if the 1929 version of the law had guided the *Stahl* interpretation the result may well have been different.

Appellant relies, in part, on *Everhard v. Brown*, 75 Ohio App. 451, 62 N.E.2d 901 (1945), in which an Ohio appellate court held that Ohio's anti-lapse statute was "inapplicable to a will containing the terms 'equally share and share alike.'" We believe that reliance is misplaced. Although one of the headnotes of the published opinion uses the words "equally share and share alike," the text of the will under consideration in that case does not. At issue in *Everhard* was the effect of a provision that stated that a class gift was to be distributed "among the nephews, nieces, grandnephews, and grandnieces of myself and the nephews, nieces, grandnephews, and grand-nieces of my wife ... share and share alike, grandnephews and grandnieces receiving the same share as the nephews and nieces." The court held that grandnephews and grandnieces who were the heirs of deceased nephews and nieces would not also inherit under the Ohio anti-lapse statute because certain members of the class would receive a greater amount than others, a result obviously not intended by the testator. The court found the "share and share alike" language significant but not automatically controlling in defeating the grandneph-ews and grandnieces claim because it expressed the testator's intent that each member of the class, whether nephew or niece or grandnephew or grandniece, i.e. first generation or second generation beneficiary, receive the same amount. The analy-sis of the language was part of the court's quest to determine the intention of the testator and was read, not in isolation, but in the context of all the language detailing the bequest.

## IV. The testatrix's intent

Appellant ascribes a *per capita* intent to his mother's will. His conclusion that she intended her surviving son to receive the entire residuary estate, however, is not clearly indicated

by the will. The testatrix could have explicitly expressed an intent to avoid the anti-lapse statute, just as she could have specified survivorship as a prerequisite to inheritance. Because her intent is not clear, and because appellant has not satisfied his burden of overcoming the presumption that § 4–403(a) applies, we believe the statute should apply in this case.

The testatrix's will does not offer any explicit indication of her intentions regarding the residuary estate should one of her sons predecease her. Appellant suggests that, because the testatrix's non-probate dispositions passed to him by survivorship by virtue of his holding them in joint tenancy with the testatrix, an inference should be gleaned that the testatrix intended him to have her residuary estate in the event that her other son, Maurice, predeceased her.

This conclusion is possible but not mandatory. Indeed, the opposite result could also be reached. The testatrix owned some property in joint tenancy with appellant, but retained in her individual name other property constituting the residuary estate. A reasonable inference is that, because she owned the latter property in a different manner, she intended a different disposition for it.

Another possible indication of the testatrix's intention to have a *per stirpes* distribution is her use of provisions for survivorship in the will. The testatrix specified that her husband would inherit her personal property, but if he did not survive her the personal property would go to her "surviving children." In the section of the will identifying the Personal Representatives of her estate, the testatrix named her husband as her first choice and then, in the event that he did not survive her, she nominated her two sons. Finally, in the residuary section of the will, the testatrix devised her residuary estate to her husband, and only if he did not survive her would it go to her sons, Maurice and Ronald. Throughout the will, the testatrix demonstrated that she understood the need to specify her intent should her beneficiaries predecease her, and she was able to express clearly that intent. These references to survivorship are not determinative of the testa-

trix's intent regarding the residuary estate if one of her sons were to predecease her. The lack of any provision for her sons predeceasing her, however, deals a solid blow to appellant's contention that the testatrix clearly expressed a desire to have a *per capita* distribution, with the survivor taking the whole legacy.

Apart from the absence of any provision for her sons predeceasing her, there are other indications of an intent to have a *per stirpes* distribution. The current anti-lapse statute provides that, absent a contrary intent, legacies will not lapse if the legatee predeceases the testatrix, whether or not the legatee is specifically named. E.T. § 4–403(a). The legatee may be (1) "Actually and specifically named," (2) "Described or in any manner referred to, designated, or identified;" or (3) "A member of a class in whose favor a legacy is made." *Id.*

Therefore, the testatrix need not have specifically identified her two sons by name as her legatees, but the fact that she did identify them indicates that she intended them to receive their legacies as individuals, rather than as a class. As noted above, before the 1929 code revisions, legatees who were identified as a class rather than as individuals took under a *per capita* regime, because the class could be diminished or augmented before the testator's death. *Stahl*, 147 Md. at 132, 127 A. 760. Appellant, however, identified her sons by name in the residuary section of her will. The specific identification of the legatees lends weight to appellee's argument that the testatrix intended a *per stirpes* arrangement.

A testator's inaction after a named legatee predeceases the testator can be significant in an interpretation of the testator's intent. *Duering*, 127 Md. at 112, 96 A. 269. In *Duering*, a testator was held to have presumed to understand the effect that the death of one of his daughters, a legatee of his will, would have on the disposition of her share of his estate under the then current anti-lapse statute. *Id.*

Similarly, in *Longerbeam v. Iser*, 159 Md. 244, 150 A. 793 (1930), a testator granted a legacy to his wife that was expressed to be in lieu of dower, and the Court of Appeals

held that the form of the legacy did not mean that the testator meant for it to be dependant upon his wife outliving him. The result was that, although the wife predeceased the testator, the rights of her next of kin were preserved by the anti-lapse statute, and they could take the legacy in place of the deceased wife. The testator was presumed to understand the statute, and his inaction during the eleven years between his wife's death and his own was determinative. *Id.,* 159 Md. at 248, 150 A. 793.

Another indication of the testatrix's intent in this case is her inaction following her son Maurice's death. The testatrix wrote her will in 1979 and indicated that, in the event her husband predeceased her, she wished her two sons to inherit her residuary estate. Her husband died in 1980. After her son Maurice died in 1987, the testatrix had nine years, until her own death in 1996, in which to change her will to specify that her surviving son, Ronald, would be the sole beneficiary of her residuary estate, to the exclusion of appellee. Her failure to do so does not prove that she intended Maurice's heir to receive his share of her residuary estate, but it lends support to that contention.

In light of all of these factors, appellant has not met his burden, under E.T. § 4–403, of demonstrating that the testatrix intended her legacy to her predeceased son Maurice to lapse. Accordingly, we will affirm the decision of the trial court.

### V. The form of the circuit court's order

Appellant's final contention is that the trial court's order was inconsistent with a finding that the anti-lapse statute applies. He makes this argument because the statute directs that distribution be made directly to "those persons who would have taken the property if the legatee had died, testate or intestate, owning the property." E.T. § 4–403(b). The trial court's order, however, directs that distribution be made to appellee as the "Personal Representative of the Estate of L. Maurice Rowe, III," a decision that was not appealed directly by appellee.

It is noted that appellee filed her original Petition to Construe Will in her individual name and asked that one-half of Margaret's estate be distributed to her. In the petition, she indicated that she is both the personal representative of Maurice's estate and the "sole residuary legatee" thereof. It is not clear from the record that Maurice's estate remains open approximately eleven years after his death. Be that as it may, it is apparently agreed that appellee is, in fact, the sole residuary beneficiary of the predeceased legatee and, as such, she should have been granted directly the award of one-half of the testatrix's residuary estate. In fact, in appellee's brief, she states that the trial court "properly directed appellant to distribute ... to appellee as sole residuary legatee of the estate of L. Maurice Rowe, III." Appellant's argument, which appears to be raised as an oblique attack on the application by the trial judge of the anti-lapse statute and not on the form of the award itself, does not support a reversal of the trial court's interpretative decision of the testator's intent and the application of the anti-lapse statute. It requires only a correction of the order directing the share to appellee. Accordingly, we shall remand the case to the circuit court for this purpose.

**JUDGMENT AFFIRMED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR CORRECTION OF THE ORDER.**

**COSTS TO BE PAID BY APPELLANT.**